## TURNBOW LUMBER CO. v. EASTHAM.
### (No. 560.)

(Court of Civil Appeals of Texas. Beaumont. March 3, 1920.)

**1. Frauds, statute of ⬦⇒18(2)—Oral assumption of bill for valuable consideration not naked "promise to answer for debt or default of another."**

Where a lumber company agreed with owner to pay bills for plumbing, houses to be sold after construction and bills paid and balance applied on owner's indebtedness to the company, such was not a mere naked "promise to answer for debt or default of another," within the meaning of Rev. St. 1911, art. 3965, requiring such agreements to be in writing, but an express assumption of the plumber's bills for a valuable consideration.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Promise to Answer for Debt, Default, etc.]

**2. Contracts ⬦⇒187(3)—Creditor may sue on defendant's promise to debtor to pay the debt.**

Where a lumber company furnishing owner lumber agreed to assume plumber's bill on buildings, the company to receive payment when buildings were sold for lumber furnished and balance after payment of bills on old indebtedness from owner, the obligation to the plumber became binding on the lumber company, and it is immaterial that the plumber did not know of the agreement when made, where he did know before completing the work and accepted the agreement and the lumber company, after accepting the benefits, cannot shield itself in plumber's suit on theory that the plumber was no party to the contract.

Appeal from Jefferson County Court; D. P. Wheat, Judge.

Suit by E. E. Eastham against the Turnbow Lumber Company and another. Judgment in favor of the defendant J. S. Meriwether and for plaintiff against the defendant Turnbow Lumber Company, and the latter appeals. Affirmed.

Crook, Lord, Lawhon & Ney, of Beaumont, for appellant.

David E. O'Fiel, of Beaumont, for appellee.

HIGHTOWER, C. J. The appellee, E. E. Eastham, brought this suit in the county court at law of Jefferson county, as plaintiff, against the appellant, Turnbow Lumber Company, and also against one J. S. Meriwether, as defendants, seeking to recover judgment against them for $777.85. The trial was before the court without a jury and resulted in a judgment in appellee's favor as against appellant, Turnbow Lumber Company, for the full amount claimed, with interest on the same from the 1st day of January, 1919, at the rate of 6 per cent. per annum, but appellee recovered nothing as against defendant Meriwether. From this judgment the Turnbow Lumber Company has appealed to this court.

No question of pleading is made the basis of any assignment of error found in appellant's brief, and we will therefore not make a lengthy statement of the pleadings of the parties.

In the fall of 1917 said J. S. Meriwether, a building contractor, had on hand a considerable quantity of building material, which had been left over after buildings which he had been constructing had been completed, and at that time Meriwether was considerably in debt, and among others of his creditors was the Turnbow Lumber Company, to whom he at that time owed about $9,000 for building material, lumber, etc., that he had been furnished by the Turnbow Lumber Company in order to enable him to carry out several of his building contracts. Meriwether at that time was desirous of utilizing in some way the extra material or left-over material which he had on hand, as above stated, and, being the owner of three certain vacant lots in the city of Beaumont, he conceived the idea of using this left-over material in constructing buildings on these three lots, with the intention of then selling such improved premises, and with the proceeds thereof paying first the cost of such improvements and then paying the balance of such proceeds on his old indebtedness, especially the debt owed the Turnbow Lumber Company. Meriwether knew at the time he conceived this idea that he would not have quite enough material of his own to fully complete the buildings that he contemplated on his three lots, and expected and intended to buy additional material, so far as necessary, from the Turnbow Lumber Company, with which to complete the buildings on these lots. He also knew that he was unable to pay for necessary plumbing and electrical work and appliances that would have to go into these buildings, and before attempting their construction he had an understanding with the appellee, Eastham, to the effect that he (Eastham), who was engaged in the general plumbing business in the city of Beaumont, would furnish to him (Meriwether) all necessary plumbing to complete the three buildings which Meriwether was contemplating for the total consideration of $777.85, and that Eastham would wait for his money until the buildings could be sold after being completed, and then Eastham's bill for plumbing was to be paid by Meriwether out of the proceeds of such sale. With this understanding, Meriwether proceeded with the construction of the buildings, as above stated, in the meantime purchasing from appellant, Turnbow Lumber Company, additional building material as he needed it in such buildings, but with no understanding at that time with the Turnbow Lumber Company as to

how or when such additional material was to be paid for. Later on, and after one of the buildings was practically completed and another one of them largely so, the Turnbow Lumber Company, appellant, insisted upon being paid for material going into the buildings which it had furnished, and, Meriwether being unable to comply with such demand, appellant refused to extend him any further credit. Thereupon, according to the contention of appellee, Eastham, the Turnbow Lumber Company, acting through its authorized agent and manager, Hubert Oxford, made and entered into a verbal agreement and contract, substantially as follows:

Meriwether explained to appellant the arrangement he had with appellee, Eastham, for the plumbing material and labor that was being furnished by Eastham, and the terms upon which Eastham was doing the work, and that it was agreed and understood between him and Eastham that the plumbing material and the cost of installing it was to be paid for out of the proceeds of the sale of said houses after they should be completed, and that if appellant would continue to credit Meriwether and furnish the necessary material to carry all three of the buildings to completion, he (Meriwether) would promptly sell the same aft r completion, and that after the cost of the erection of such buildings should be fully paid, which cost was to include all plumbing, electrical appliances, and work, etc., the balance of the proceeds of the sale of such buildings would be turned over to appellant in payment of its bill for the lumber and material that was used in such buildings, and whatever balance was then left out of the entire proceeds should be applied by appellant upon the old indebtedness owed it by Meriwether; provided, however, appellant, Turnbow Lumber Company, would assume and bind itself to pay Eastham's plumbing bill. Meriwether testified on the trial, substantially, that appellant, acting through its authorized agent, Hubert Oxford, agreed to this arrangement, and expressly assumed and agreed to pay Eastham's plumbing bill; that the plumbing bill was fully considered and the amount thereof discussed by himself and Oxford; and that it was further understood between him and Oxford that he (Meriwether) would go ahead and supervise the construction of said buildings until they should be fully completed and sold, and that appellant would continue in the meantime to furnish whatever additional material that was necessary for the construction and completion of such buildings. Meriwether further testified that at the time this agreement was made by which appellant assumed and expressly agreed to pay Eastham's plumbing bill Eastham was not aware thereof, and did not learn for some time afterwards that Meriwether had made such an arrangement with appellant; but that before the buildings were fully completed and East-ham's plumbing work was fully finished he advised Eastham of the arrangement that he had made with appellant for the payment of his bill, and that such arrangement was agreeable to Eastham and was accepted by him. The testimony shows, practically without contradiction, that after this claimed agreement was made with appellant by which it assumed and agreed to pay the Eastham bill Eastham continued to carry out his contract with Meriwether in furnishing all necessary plumbing material and furnishing the labor to install the same, and that his contract with Meriwether was fully carried out and completed; and the testimony further shows, without dispute, that after the buildings were finally completed they were sold and the proceeds of the sale were turned over by Meriwether to appellant, Turnbow Lumber Company, and the Turnbow Lumber Company paid out of the proceeds several items of expense to different persons for work and material that had gone into the buildings, and then deducted from the proceeds enough to pay the additional lumber and material that had been furnished by appellant and which had gone into said buildings, and gave credit to Meriwether on its books to that extent, and then the balance of the proceeds the appellant applied upon the old indebtedness owed by Meriwether to itself, which balance was something over $4,000, and its old account against Meriwether was reduced to that extent, and Meriwether was given credit on the old account for the same. Up to that time, it seems, Eastham had not presented his bill to appellant, for the reason that he had been unexpectedly delayed in furnishing the plumbing in one of the buildings, and they had been sold and the proceeds distributed as before stated before Eastham finally presented his bill to appellant for payment. When Eastham's bill was presented, however, to appellant, some of the testimony shows that appellant first declined to pay it on the ground that it had not been O. K.'d by Meriwether, and that thereupon Eastham had the bill O. K.'d by Meriwether, and shortly afterwards again presented the same for payment to appellant, and appellant then refused absolutely to pay the bill, stating that it had not contracted or agreed to do so, etc. Its refusal to pay the bill occasioned this suit.

The trial court, at the request of appellant, filed findings of fact and conclusions of law, and among other findings of fact was one to the effect that appellant, Turnbow Lumber Company, acting by and through its duly authorized agent and manager, Hubert Oxford, expressly agreed with Meriwether to assume and pay the Eastham bill, as testified by Meriwether, although Hubert Oxford denied, substantially, that there was any such agreement made with Meriwether, and testified affirmatively that he was not asked by Meriwether to assume Eastham's bill and that he did not do so, and this was the prin-

cipal controverted issue of fact, as we conceive the record.

[1] The first assignment of error complains that the trial court erred in rendering judgment against appellant because, as claimed in the assignment, the undisputed evidence shows that the debt sued on by appellee was a debt and obligation contracted by Meriwether individually, and that appellant never agreed in writing to pay the same to Eastham, and because the undisputed evidence further showed that Meriwether was never released from liability by Eastham for such debt. In other words, appellant invokes as a defense the statute of frauds, being article 3965, Revised Statutes. The second subdivision of that article provides, substantially, that any promise on the part of a person to answer for the debt, default, or miscarriage of another, in order to be binding, must be in writing. We think that this statute cannot be successfully invoked and applied in this case, for the reason that if, as found by the trial judge, appellant, for a valuable consideration, expressly assumed and agreed to pay Eastham's bill for the plumbing that went into these houses, such promise and agreement on the part of appellant was not a mere naked promise to answer for the debt or default of another, to wit, Meriwether, but that it was, on the contrary, an agreement and contract on the part of appellant with Meriwether, made for the use and benefit of Eastham, by which appellant expressly assumed Meriwether's obligation and made it its own, and expressly assumed Eastham's bill and made the indebtedness its own, and expressly agreed to pay it for a valuable consideration moving appellant to such agreement, and that therefore the statute cited cannot apply.

[2] It is not contended by appellant that there was not a valuable consideration moving it to make this agreement, as claimed by appellee and as found by the trial court, but rather it is conceded that a valuable consideration did pass to appellant, in that the proceeds of the buildings, in accordance with the agreement between Meriwether and appellant, after the cost of the construction of the houses was deducted, was applied by appellant upon Meriwether's old indebtedness, and amounted to something over $4,000, and reduced appellant's old account against Meriwether to that extent. Therefore the promise and agreement on the part of appellant, based upon a valuable consideration moving it thereto, to assume and pay the Eastham bill, made that obligation its own, and there was not merely a verbal agreement on its part to answer for the debt or default of Meriwether, or a mere promise on its part to pay such bill in the event Meriwether should not do so. And the fact that Eastham was not aware, at the time this contract between Meriwether

and appellant was made, that any such arrangement had been made for the payment of his debt, can make no difference, we think; and it being made for his benefit as well as that of appellant, and being accepted by him when he was apprised of it, appellant is in no position to shield itself on the theory that Eastham was not a party to the contract. Blakeney v. Nalle & Co., 45 Tex. Civ. App. 635, 101 S. W. 875; Spencer & Co. v. Nalle & Co., 143 S. W. 991; Spann v. Cochran, 63 Tex. 240. We think, without discussing the assignment further, that the principle announced in the cited cases is clearly applicable here.

There is another assignment in appellant's brief, but it raises practically the same question as the first, and it also is overruled.

There being no error in the judgment, it will be affirmed; and it is so ordered.