## CHICKASAW LUMBER CO. v. BLANKE et al.

### No. 14660.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 5, 1945.

Rehearing Denied Feb. 2, 1945.

Lem Billingsley, of Fort Worth, for appellant Chickasaw Lumber Co.

Richard Owens, of Fort Worth, for appellees O. W. Blanke et al.

Melvin F. Adler, of Fort Worth, for Lumbermen's Ass'n of Texas, amicus curiae.

McDONALD, Chief Justice.

During the year 1943 W. L. Boteler entered into several written contracts with the Home Owners' Loan Corporation for the repair and remodeling of eleven houses in Fort Worth. Boteler sublet portions of the work to the six subcontractors who are appellees here. Boteler purchased some of the materials from Chickasaw Lumber Company, and the latter advanced substantial sums of money to Boteler and to the subcontractors during the progress of the work. Boteler did not make a profit on the jobs, and on some of them he sus-

tained large losses, which he was financially unable to meet. The appellees, among them, failed to collect in the aggregate some $4,000 on the amounts due them or their subcontracts.

The appellees, each suing for himself but in the same suit, sued Boteler and appellant, seeking judgment jointly and severally against the two defendants for the full amount of their respective claims. Boteler did not contest the suit. Trial to a jury resulted in a judgment for plaintiffs. Chickasaw Lumber Company has appealed.

The following is a summary of plaintiffs' petition: The first two numbered paragraphs specify the names and residences of the parties.. The third paragraph alleges by way of conclusion that "the acts and conduct hereinafter set out and related have created an indebtedness to the plaintiff by the defendant, W. L. Boteler, as a primary debtor, and an indebtedness to the plaintiffs by the defendant, Chickasaw Lumber Company, as a Trustee and guarantor." The third paragraph alleges that Boteler entered into contracts for reconditioning of buildings at six specified locations. The fourth paragraph alleges that, in consideration of Boteler's agreement to purchase lumber, nails and other building materials from Chickasaw Lumber Company needed on the jobs mentioned, the latter agreed quoting the language of the petition, "to (a) sell such building material to the defendant, W. L. Boteler, (b) to furnish certain moneys needed by the defendant, W. L. Boteler, for the financing of the performance of such contracts, and (c) to pay the subcontractors, including these plaintiffs, who furnished materials and performed labor necessary for the complete performance of such contracts, and (d) to keep books of account for the defendant, W. L. Boteler, showing the amount of materials furnished, the cost of the labor performed, by not only the defendants, but by all sub-contractors, including these plaintiffs, so that the defendants would at all times be informed of the financial affairs and circumstances surrounding the progress of the performance of such contracts; and (e) to receive, as trustee, all money paid by the Home Owners' Loan Corporation for the performance of such contracts and to hold the same in trust for all parties, including these plaintiffs, furnishing material and performing labor for the completion of such contracts, and to pay to each of such materialmen and laborers their pro rata portion of such money." The fifth paragraph alleges payment of the money from the Home Owners' Loan Corporation to Chickasaw Lumber Company, and receipt of the money by the latter "as Trustee for these plaintiffs, who are the beneficiaries of such fund according to the pro rata of material furnished and labor performed by them as hereinafter set out."

Paragraphs 6 to 10, inclusive, itemize the amounts of the various contracts of the plaintiffs, the amounts that have been paid to them, and the amounts of the unpaid balances. The substance of the eleventh and twelfth paragraphs is that the money paid by the Home Owners' Loan Corporation was received for the use and benefit of the plaintiffs, and that plaintiffs are unable to allege the exact amount so received, but that the amount was larger than the unpaid balances of plaintiffs' claims; and that Boteler and Chickasaw Lumber Company agreed that the money so received should be a trust fund devoted to the payment of plaintiffs' claims. The thirteenth paragraph alleges, alternatively, that if plaintiffs be mistaken in alleging an express agreement between Boteler and Chickasaw to such effect, that their acts and conduct led plaintiffs to believe that such an agreement existed. The fourteenth paragraph alleges, alternatively, that Chickasaw Lumber Company was the undisclosed principal, and Boteler its agent, in the dealings with the plaintiffs. The prayer is in four paragraphs, designated as (a), (b), (c), and (d), as follows: (a) That the money received from the Home Owners' Loan Corporation and turned over to Chickasaw Lumber Company be declared a trust fund for the benefit of plaintiffs. (b) That Chickasaw Lumber Company give an accounting of such trust fund. (c) That plaintiffs have judgment against defendants jointly and severally, for the amounts of their respective accounts. (d) That plaintiffs have such other relief, general and special, as they may show themselves justly entitled to.

The case was submitted to the jury on thirty-nine special issues. The first reads as follows: "Do you find from a preponderance of the evidence that W. L. Boteler entered into an agreement with Chickasaw Lumber Co. that in consideration of his agreeing to purchase lumber, nails and other building material from

Chickasaw Lumber Company, for use on a contract with Home Owners Loan Corporation for improvements at 2354 Decatur Street in Fort Worth, Texas, Chickasaw Lumber Company would pay O. W. Blanke for such materials and labor as would be furnished by him for the complete performance of said contract at Decatur Street?"

The first thirteen issues are in simila. wording, except that each inquires as to the work done by a particular plaintiff on a specified job.

The fourteenth issue reads as follows: "Do you find from a preponderance of the evidence that prior to the contract between W. L. Boteler and O. W. Blanke as to materials furnished on the contract for improvements at 2354 Decatur Street, the defendants W. L. Boteler and Chickasaw Lumber Co. pursued a course of conduct which reasonably led O. W. Blanke to rely on such course of conduct and induced him to believe that Chickasaw Lumber Company would make payment to him for performance of his contract when W. L. Boteler would receive payment from Home Owners Loan Corporation for improvements at 2354 Decatur Street?"

The fifteenth issue reads as follows: "Do you find from a preponderance of the evidence that Chickasaw Lumber Company knew that O. W. Blanke extended credit to W. L. Boteler for improvements at 2354 Decatur Street, relying upon such course of conduct (inquired about in Issue 14)?"

The remaining issues are in pairs, similar in wording to the two issues just shown, each pair of issues inquiring as to the work done by a particular plaintiff on a specified job.

It is thus seen that the issues submitted to the jury two theories of recovery. The theory presented by the first thirteen issues is that Boteler and Chickasaw Lumber Company agreed that the latter would pay the subcontractors for their labor and materials. It is not clear whether the effect of this finding is that Chickasaw became liable as a primary debtor, or merely became liable as a surety for Boteler's obligations to the subcontractors. It is hardly necessary to point out that there is a vital distinction between the two types of liability, that of a principal debtor, and that of a mere surety.

█ It is undisputed that whatever agreements there may have been between Boteler and Chickasaw were oral. If their agreement was that Chickasaw should become secondarily liable, it was unenforcible because in contravention of the Statute of Frauds. Article 3995, § 2.

Even if Chickasaw had orally promised the subcontractors themselves to answer for Boteler's contracts with them, the promise would clearly have been within the statute, under such cases as Housley v. Strawn Merchandise Co. et al., Tex. Com.App., 291 S.W. 864. In some of the authorities will be found general remarks to the effect that an oral agreement is not within the statute where the oral promise is made to the debtor, and not to the creditor. But it will be found that it is in only a limited type of cases that such oral promise is enforcible. If, as between the promisor and the original debtor, the promisor becomes primarily liable for the debt, and ought to pay it, the oral promise is enforcible. For instance, a common case is where the promisor acquires property from the original debtor, agreeing as part of the consideration for the sale to pay an indebtedness against the property. The purchaser, or promisor, as between himself and the original debtor, ought to pay the debt, and becomes primarily liable, with the result that he is not merely promising to answer for the debt, default or miscarriage of another, but is promising to pay what has become his own debt, even though the payment of the debt will incidentally discharge the obligation of the original debtor. But if, as between the promisor and the original debtor, the promisor becomes a mere surety, his promise, though made to the original debtor, is nevertheless within the statute. Turnbow Lumber Co. v. Eastham, Tex.Civ.App., 221 S.W. 667, relied on by appellees, appears to recognize this distinction. Atkinson v. Jackson Bros., Tex.Civ.App., 259 S.W. 280 (reversed on other grounds, Tex.Com.App., 270 S.W. 848, 38 A.L.R. 1377), another case relied on by appellees, points out the same distinction.

We are not able to find any evidence in the record tending to show that any agreement was made between Boteler and Chickasaw to the effect that the latter would answer for Boteler's failure to pay his subcontractors, but even if we be in error in this opinion, we should be compelled to

hold that such an agreement, since it was not in writing, would be unenforcible because of the Statute of Frauds.

We cannot find any evidence in the record tending to show that Boteler and Chickasaw Lumber Company made any sort of agreement whereby the latter assumed the former's obligation to pay the subcontractors, as an original undertaking. That Boteler was the general contractor is undisputed. The most that could possibly be inferred from the evidence would be that Chickasaw assumed some sort of obligation with respect to the moneys which Boteler collected from the Home Owners' Loan Corporation and in turn paid over to Chickasaw. An obligation to dispose of that money in some particular fashion would fall far short of an original undertaking to pay the subcontractors the full amount of their contracts regardless of whether Boteler delivered any funds for that purpose.

■ Plaintiffs' petition does not allege an agreement on the part of Chickasaw to pay the subcontractors, either as a collateral or as an original undertaking. Neither the pleadings nor the evidence will support a judgment based upon the theory of liability presented by the first thirteen issues and the jury's answers thereto.

■ The theory of liability presented by the remaining special issues seems to be that the course of conduct of the defendants was such as reasonably to induce, and such as did induce, the subcontractors to believe that Chickasaw would pay them the amount of their contracts when Boteler should receive payment from the Home Owners' Loan Corporation. While the issues submitted are rather vague, and are multifarious, there appears to be no objection on appeal to their form. It is not clear to us just what inquiry is made in the issues. Taken literally, the issues, with the affirmative answer to them, would seem to impose upon Chickasaw a liability to pay the full amount of the subcontracts, when Boteler should receive his money from the Home Owners' Loan Corporation, whether he in turn paid over the money to Chickasaw or not, and whether or not there was enough of such money to pay all of the subcontractors. Such an obligation would be decidedly more onerous than a mere obligation to account for such moneys as Boteler might turn over to Chickasaw, and is an important variance from the theory of liability alleged in plaintiffs' petition. We are left to speculation to determine what words or acts constituted the course of conduct which the jury may have considered in answering the issues. Apparently the inquiry in the issues is not limited to a question of suretyship, but includes the question of original as distinguished from collateral liability to pay. We cannot say whether the finding, whatever it may have been, involves the Statute of Frauds. We cannot say whether the course of conduct found by the jury was legally sufficient to impose liability, even granted that such conduct induced the subcontractors to believe that Chickasaw would pay their accounts, because we do not know what constituted the conduct inquired about in the issues. But regardless of all this, we can find nothing in the acts and conduct of the defendants, prior to the times inquired about in the issues, which could serve as any basis in law for the imposition upon Chickasaw of liability to pay the subcontractors merely because Boteler had collected the moneys due him from the Home Owners' Loan Corporation. On prior contracts the moneys collected by Boteler and turned over to Chickasaw had been sufficient, or practically so, to take care of Boteler's debts incurred on those jobs. There was a small loss on them, but there was testimony that Boteler had enough profit on other jobs handled through Chickasaw to absorb the loss. Then, the situation is that on the prior contracts Boteler had supplied Chickasaw with enough money to pay all claims. Chickasaw paid the claims. In no instance did Chickasaw say anything to the subcontractors which could lead them to believe that Chickasaw would stand good for Boteler's obligation, and if it had the Statute of Frauds would prevent a recovery. There is no evidence to the effect that Chickasaw made any false or fraudulent representations which could have induced the subcontractors to extend credit to Boteler on the later jobs on which the losses occurred. We know of no rule of law which would have imposed upon Chickasaw the duty to pay the subcontractors simply because it had made proper accounting of the funds which Boteler had placed in its hands upon completion of the former jobs. Whether the prior acts and conduct of the parties was of such a nature as to lead the subcontractors to believe that Chickasaw would prorate the funds received from Boteler among the

various subcontractors and materialmen, which is the theory advanced in plaintiffs' petition, is a question that is not before us on this appeal because the case was not submitted to the jury on that basis.

By way of cross-assignment appellees urge that the evidence shows without dispute that Boteler was the mere agent of Chickasaw, and that Chickasaw may be held liable as the undisclosed principal. To say the least, the evidence does not show this as a matter of law. It comes nearer to showing, if it does not in fact show, the contrary as a matter of law.

As we view the record, the judgment in favor of the appellees is without support in either the pleadings or the evidence.

Reversed and remanded.