**A/S HYDRAULICO WORKS, Plaintiff,**

v.

**FORT WORTH AND DENVER RAILWAY COMPANY, Defendant and Third Party Plaintiff,**

v.

**HOUSTON GENERAL INSURANCE COMPANY, Third Party Defendant.**

**Civ. A. No. H–77–388.**

United States District Court,
S. D. Texas,
Houston Division.

Jan. 9, 1980.

Ross, Griggs & Harrison, James C. Moore, Houston, Tex., for plaintiff.

Law, Snakard, Brown & Gambill, Michael T. Watson, Forth Worth, Tex., and Hicks, Hirsch, Glover & Robinson, Iris Hefter Robinson, Houston, Tex., for defendant and third party plaintiff.

## MEMORANDUM AND ORDER:

STERLING, District Judge.

Pending before the Court is Third Party Defendant's, Houston General Insurance (HGI), motion for summary judgment. A/S Hydraulico Works brought suit against Fort Worth and Denver Railway Company, (FW&D) to recover for losses allegedly sustained by it when freight it had shipped from Copenhagen, Denmark, through Houston, Texas, to Cheyenne, Wyoming, was damaged in transit. In its third party complaint, FW&D alleges that HGI is responsible to it for any recovery obtained by the original Plaintiff. FW&D alleges that it entered into a trucking contract with Postal Shuttle Service, Inc., (PSS), in March, 1971. Under the trucking contract PSS agreed to indemnify FW&D for any loss incurred by FW&D as a result of the actions of PSS. PSS also agreed to procure public liability and property damage insurance and insurance against all loss, damage, or delay to freight while in the possession of PSS. On November 21, 1974, Frank B. Hall & Co. of Texas issued FW&D a certificate of insurance indicating that PSS was carrying certain insurance policies with HGI, including a comprehensive general liability policy covering property damage up to $50,000. FW&D alleges that any damage to the freight was caused by PSS's dropping of the Sea-Land container in which the freight was being shipped on April 2, 1975. HGI

denies that the damage to the freight is covered by the policy issued to PSS which excluded loss to property in the care, custody or control of PSS. FW&D bases its third party complaint against HGI on its contention that the issuance of the certificate of insurance created an implied suretyship on the part of HGI. It is not clear from the third party complaint how the implied suretyship came to be created. The certificate indicates that Frank B. Hall and Co. issued the certificate to FW&D. FW&D further alleges that the "certificate was issued to [FW&D] with knowledge that the trucking contract between [FW&D] and [PSS] required such coverage." In paragraph numbered VI of the third party complaint, FW&D states: "By its certificate of insurance to [FW&D], [HGI] impliedly assured [FW&D] that it would act as surety in case of an obligation arising on the part of [PSS] in favor of [FW&D] under the terms of the trucking contract. [FW&D] is entitled to recover full indemnity from [HGI] . . . ." Thus, it is not clear whether FW&D is alleging that Hall & Co. had knowledge of the terms of the trucking contract or HGI had that knowledge. For purposes of this motion the Court will assume that HGI possessed that information.

In support of its motion for summary judgment, HGI has attached a copy of the insurance policy issued to PSS with the exclusionary clause relating to property in the care, custody or control of PSS as well as a copy of the certificate of insurance. The certificate produced by FW&D and HGI differ in that on HGI's certificate the policy numbers shown on the FW&D certificate have lines drawn through them with different numbers inked in below. The insurance policy produced by HGI corresponds to the inked in number on the certificate produced by it. HGI's motion for summary judgment is not supported by affidavit and HGI requests that the Court consider as true the factual allegations made by FW&D in its third party complaint. In view of the discrepancy noted above as to the insurance policy numbers and in view of HGI's request that the factual allegations of the third party complaint

be taken as true, this Court will treat HGI's motion for summary judgment as the functional equivalent to a motion to dismiss for failure to state a claim under Fed.R.Civ. Pro. 12(b)(6). 6 Moore's Federal Practice ¶ 56.11[2]. However, even under this standard, the Court is of the opinion that HGI's motion should be granted. In response to HGI's motion, FW&D has raised the issue of estoppel in its memorandum of law in opposition to HGI's motion for summary judgment. The Court will consider FW&D's claims of both implied suretyship and estoppel.

The usual starting point in an analysis of whether an insurance company is liable for a particular loss is whether the loss falls within the coverage afforded by the policy. FW&D, however, concedes in its memorandum that the loss was not covered by the insurance policy due to the exclusionary clause relating to property in the care, custody or control of PSS. In its third party complaint, FW&D alleges that the Sea-Land container was in the exclusive possession and control of PSS. Under these facts, it appears that FW&D's concession concerning non-coverage is well made. *See, Goswick v. Employers' Casualty Company,* 440 S.W.2d 287 (Tex.1969) and *Brunson v. Iowa Home Mutual Casualty Company,* 224 F.Supp. 592 (S.D.Ala.1963).

Instead of contending that the loss was covered by the policy, FW&D relies on an implied contract of suretyship. Although FW&D makes no statement concerning the relationship of Frank B. Hall & Co. to HGI, for purposes of the motion, the Court will treat the issuance of the certificate by Hall & Co. as having the same legal effect as if it had been issued directly by HGI.

■ A "surety" is defined as "a person, who, by an accessory agreement in the nature of a collateral undertaking, engages to be responsible for the debt, default, or miscarriage of another." 53 Tex.Jur.2d Suretyship § 1. In essence, a surety is one who agrees to be responsible for the debt of another. *Texas Construction Associates, Inc. v. Balli,* 558 S.W.2d 513 (Tex.Civ.App.-

Corpus Christi 1977). FW&D has not cited any authority for its theory of an implied suretyship. At least one secondary authority is of the opinion that there is no such creature:

> "While an obligation in suretyship will not be implied and never arises by act of the parties except by express contract . . . ."

72 C.J.S. Principal and Surety § 38. In support of that position C.J.S. cites one Texas case, *Chickasaw Lumber Company v. Blanke*, 185 S.W.2d 140 (Tex.Civ.App.-Ft. Worth, 1945, writ refused for want of merit). However, *Chickasaw* rests on the proposition that any implied agreement to act as a surety is within the statute of frauds and is therefore unenforceable unless it is in writing. HGI here has neglected to interpose the statute of frauds as a defense. The statute of frauds is an affirmative defense which must be pleaded. Rule 8(c), Fed.R.Civ.Pro. Therefore, the Court will consider FW&D's claim founded on an implied suretyship.

■ Traditionally implied contracts are of two types: implied in fact and implied in law. "A contract in fact is implied where, despite the absence of any express declaration of intent by the parties, their acts are such as to indicate, according to common understanding and the ordinary courses of dealing between men, a mutual intent to contract." 13 Tex.Jur.2d Contracts § 5. FW&D relies on the issuance of the certificate of insurance by HGI in the context of HGI's alleged knowledge of the terms of the FW&D-PSS trucking contract to assert that a contract of surety should be implied. The certificate of insurance, attached to FW&D's third party complaint, itself indicates only that PSS was carrying certain insurance policies with HGI. The certificate also states that "this certificate of insurance neither affirmatively nor negatively amends, extends or alters the coverage afforded by the policy or policies shown." The trucking agreement required PSS to indemnify FW&D for property damage losses occasioned by any acts or omissions of PSS. It also required PSS to procure liability and property damage insur-

ance in stated amounts as well as "insurance against all loss, damage, or delay to freight while in the possession of [PSS]." As noted earlier the actual policy taken out by PSS excluded losses to property in the care, custody or control of PSS. FW&D is therefore, asserting that by sending the certificate of insurance to FW&D, HGI intended to provide insurance to FW&D at no cost for items which it had specifically excluded from its policy with PSS.

■ It is well settled that a contract or agreement may not be implied contrary to the intentions or understandings of the parties. *Houston General Insurance Company v. Lane Wood Industries, Inc.*, 571 S.W.2d 384 (Tex.Civ.App.-Ft. Worth, 1978, no writ). Nor may a contract be implied against the express declaration of the party to be charged. *Lewis v. Hill*, 409 S.W.2d 946 (Tex.Civ.App.-Amarillo, 1966). Furthermore, the conclusion that HGI intended to contract with FW&D in the manner alleged by FW&D is contrary to the "common understanding and the ordinary courses of dealing between men." 13 Tex.Jur.2d, *supra*. Therefore, the Court concludes that FW&D has not made out a claim for an implied in fact contract as a matter of law.

■ Contracts implied in law are obligations that are created by law on the grounds of reason and justice. 13 Tex. Jur.2d Contracts § 6. The basis for the concept is the reluctance of the law to permit unjust enrichment. *Knebel v. Capital National Bank of Austin*, 505 S.W.2d 628 (Tex.Civ.App.-Austin, aff'd in part, rev'd in part, 518 S.W.2d 795 (Tex.1974)). FW&D does not allege that it conferred any benefit on HGI or that HGI has been unjustly enriched in any manner. Therefore, FW&D does not have a cause of action based on a contract implied in law theory.

Although FW&D has not pleaded a cause of action based on estoppel against HGI, it has raised the issue of estoppel in its opposition to HGI's motion for summary judgment. In *Sherman v. Hallbauer*, 455 F.2d 1236 (5th Cir. 1972), the Court ruled that although the Plaintiffs originally insisted

on a shaky legal position and shifted only to solid legal theory in their memorandum in opposition to summary judgment, the trial court should have construed the Plaintiff's revised theory of case as set forth in the memorandum as a motion to amend their pleadings and should have allowed the amendment. Therefore, this Court will consider FW&D's estoppel argument which is as follows: HGI issued its certificate of insurance to FW&D knowing that the trucking contract between FW&D and PSS required coverage for losses occurring by reason of PSS's handling of property; after receiving the certificate of insurance FW&D continued to do business with PSS and would be harmed by the policy exclusion relating to property in the care, custody or control of PSS; therefore, HGI should be estopped to assert that policy exclusion because it did not inform FW&D that the insurance coverage provided PSS by HGI was not co-extensive with that called for by the trucking contract made by FW&D and PSS.

Traditionally the elements of estoppel are: a false representation or concealment of material facts; made with knowledge, actual or constructive, of the facts; to a party without knowledge, or the means of knowledge, of the facts; with the intention that it should be acted on; and the party to whom it was made must have relied or acted on it to his prejudice. *Traylor v. Tray*, 547 S.W.2d 644, 652 (Tex.Civ. App.-Corpus Christi, 1977). Estoppel can arise by silence as effectively as by words where there is a duty to speak. *Traylor, supra,* and *Employees Casualty Company v. Tilley*, 496 S.W.2d 552, 560 (Tex.1973). Where estoppel is based on silence or inaction, there must be some element of turpitude or negligence connected with the silence or inaction by which the other party is misled to his injury. *Humble Oil & Refining Company v. Trapp*, 194 S.W.2d 781 (Tex.Civ.App.-Austin, 1946, writ ref'd).

Analyzed in terms of these estoppel concepts, FW&D claims based on estoppel must fail. The Court can discern no basis for any duty on the part of HGI to analyze

the PSS insurance policies in light of the PSS-FW&D trucking contract, then to investigate to determine whether PSS had procured any other insurance policies to plug possible gaps in its coverage, and then to report to FW&D that in the event some future loss occurred in a certain manner, PSS would not be covered. The means for ascertaining the actual coverage supplied by the PSS policies was easily available to FW&D. FW&D has not alleged any negligence or turpitude on the part of HGI in failing to inform FW&D of the coverage afforded PSS. Rather the certificate plainly states that the certificate does not amend the policies in any fashion. In the exercise of due diligence, FW&D should have inspected those policies to determine what coverage had been obtained by PSS. Instead of concealing any material fact, the certificate indicated what policies had been issued to PSS. FW&D could not have reasonably relied on the certificate as embodying all the material terms of the policy in view of the fact that insurance policies typically contain exclusionary clauses. The exact exclusionary clause at issue here is not an atypical one. *See*, 44 Am.Jur.2d Insurance § 1423. FW&D's contractual rights are with PSS and it is not the function of the doctrine of estoppel to create independent causes of action, but only to preserve existing legal rights. *See, Missouri Pacific Railroad Company v. American Statesman*, 552 S.W.2d 99 (Tex.1977) and *Southland Life Insurance Company v. Vela*, 147 Tex. 478, 217 S.W.2d 660 (1949).

It is, therefore, ORDERED that HGI's motion for summary judgment be GRANTED.