**In re UNITED SCIENCES OF AMERICA, INC., Debtor.**

**Daniel J. SHERMAN, Trustee, Plaintiff,**

v.

**FIRST CITY BANK OF DALLAS, Defendant.**

**Bankruptcy No. 387–30381–HCA–7. Adv. No. 387–3601.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

March 25, 1988.

---

John Maxfield, Stigall & Maxfield, Dallas, Tex., for First City Bank of Dallas, defendant.

Larry A. Levick, Bruce Akerly, Berman, Mitchell, Yeager & Gerber, Dallas, Tex., for Daniel J. Sherman, trustee, plaintiff.

---

## MEMORANDUM OPINION

HAROLD C. ABRAMSON,
Bankruptcy Judge.

### FINDINGS OF FACT

1. Plaintiff is the duly appointed Trustee of the above-captioned bankruptcy estate (the "Debtor").

2. First City Bank of Dallas ("Defendant") is a national banking association with its principal offices in Dallas, Texas.

3. Debtor filed its original petition in bankruptcy and an order for relief was entered by this Court on January 21, 1987 (the "Petition Date").

4. Prior to October 23, 1986 (the date ninety days before the Petition Date), Debtor opened MasterCard/Visa account no. 01–27720 with Defendant. Also, prior to October 23, 1986, Debtor opened the following bank accounts with Defendant: 41–11290, 01–37653, 01–37661, 01–37679, and 01–37687 (the "Accounts"). Also, in the ninety day pre-petition period, Defendant caused to be opened a general ledger account for Debtor.

5. Debtor and Defendant entered into a contract regarding the Accounts on May 2, 1986, which was admitted into evidence as Plaintiff's Exhibit "A".

6. Debtor made the following deposits on the following dates during the pre-petition period into the Accounts:

a) October 23, 1986 to January 6, 1987: at least $1,800,000;

b) January 7, 1987 to January 21, 1987: at least $275,000.00; and

c) January 13, 1987 through January 21, 1987: at least $112,000.00.

7. First City made the chargebacks on the Accounts during the pre-petition period totaling $62,619.43.

8. In addition, the sum of $102,387.65 still remains in the Accounts.

9. The following restrictions were placed on the Accounts by First City as of October 23, 1986 and continued through the Petition Date:

a) First City could unilaterally deduct chargebacks from proceeds directed toward the Accounts prior to crediting the Accounts.

b) First City could unilaterally setoff any claims it asserted against Debtor by deducting sums from the Accounts.

c) No withdrawals could be made without First City's express or implied consent.

10. The general ledger account was established by First City to control customer chargebacks.

11. The balance on hand in the Account as of January 21, 1987, the petition date, was $202,387.65.

12. Plaintiff and Defendant agreed to an Interlocutory Order Compelling Turnover of Property of Debtor's Estate which order was not to prejudice the rights of either party. The amount turned over to the Plaintiff in such order was $100,000.00.

13. The Debtor was a nationwide seller of health food products. In the course of business, the Debtor accepted payment from customers in the form of Visa and MasterCard charge plates. The "charge slips" from these transactions were presented to the Bank for collection.

The Bank collected these charge slips pursuant to an agreement between the Bank and the Debtor titled "Merchant/Bank Agreement for Electronic Point of Sale Service." In short, the Agreement provided that the Debtor would "deposit" the charge slips, and receive a credit to one of its accounts, subject to the Bank's right to "charge-back" uncollectible items. For example, if a customer had a dispute with the merchant, complained to Visa, and Visa refused to honor the slip, the Bank was entitled under the Agreement to charge-back the Debtor's account for the amount of the item. This process is very similar to the check collection process.

The dispute in this instance arises because of the Bank's attempt to "charge-back" uncollectible items received and deposited by the Debtor pre-petition, but returned to the Bank post-petition.

14. First City did not accumulate funds in the accounts for the purpose of obtaining a right of setoff against the Debtor.

15. First City charged back $62,619.00 in the ninety day pre-petition period and seeks termination of stay for post-petition chargebacks of $102,387.65, the remaining cash on hand in the accounts after the Interlocutory Order Compelling Turnover of Property of Debtor's Estate.

16. First City did not obtain by transfer claims of other parties for the purpose of off-set.

### CLAIMS OF THE TRUSTEE

The Trustee asserts the following:

1. All setoffs made or sought to be made by First City contravene 11 U.S.C. § 553(a)(2).

2. First City's claim of setoff is precluded by the absence of "mutuality."

3. Setoffs made after First City exercised control of the accounts contravene 11 U.S.C. § 553(a)(3).

4. First City has no post-petition right of setoff.

5. First City has no lien on the accounts.

### CLAIMS OF THE BANK

The Bank claims the right of offset pursuant to 11 U.S.C. § 553(a). The Bank's briefs are not very informative.

### CONCLUSIONS OF LAW

1. The contractual relationship between the Bank and the Debtor was of a type governed by Article 4 of the Uniform Commercial Code.

2. The provisions of Article 4 of the Uniform Commercial Code govern transactions between the Bank and the Debtor in this type of credit card collection arrangement. *See, Equitable Bank of Littleton v. Jobin, (In re Twenty–Four Hour Nautilus Swim and Fitness Center, Inc.),* 81 B.R. 71 (D.Colo.1987). Section 4–212(a) of the Commercial Code defines the Bank's right to charge-back:

(a) If a collecting bank has made provisional settlement with its customer for an item and itself fails by reason of dishonor, suspension of payments by a bank or otherwise to receive a settlement for the item which is or becomes final, the bank may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it learns the facts it returns the item or sends notification of facts. These rights to revoke, charge-back and obtain refund terminate if and when a settlement for the item received by the bank is or becomes final (Subsection (c) of Section 4.211 and Subsections (b) and (c) of Section 4.213).

Tex.Bus. & Com.Code Ann. § 4.212 (Tex. UCC) (Vernon 1968). The official comment provides the public policy reason behind this procedure:

1. Under current bank practice, in a major portion of cases banks make provisional settlement for items when they are first received and then await subsequent determination of whether the item will be finally paid.... Statistically, this practice of settling provisionally first and then awaiting final payment is justified because more than ninety-nine per cent of such cash items are finally paid, with the result that in this great preponderance of cases it becomes unnecessary for the banks making the provisional settlements to make any further entries. In due course the provisional settlements become final simply with the lapse of time. However, in those cases where the item being collected is not finally paid or where for various reasons the bank making the provisional settlement does not itself receive final payment, under the American Bankers Association Bank Collection Code, under Federal Reserve Regulations and operating letters and under various types of agreements between banks and between customers and banks, provision is made for the reversal of the provisional settlements, charge-back of

provisional credits and the right to obtain refund. Subsection (1) codifies and simplifies the statement of these rights.

Tex.Bus. & Com.Code Ann. § 4.212 comment 1 (Tex. UCC) (Vernon 1968).

A simple walk through the Uniform Commercial Code will demonstrate its application in this case. First City was a collecting bank in this instance, since it was a bank handling an item for collection. § 4–105. Unless a contrary intent appears, the settlement given by a collecting bank is provisional before the settlement is final and the collecting bank is an agent of the owner of the item during the collection process. § 4–201(1). The statute operates to keep the risk of loss upon the owner of the item rather than the bank. *Allen v. Carver Federal Savings & Loan Association*, 123 Misc.2d 704, 477 N.Y.S.2d 537, 39 U.C.C. 249, 250 (N.Y.App.Term 1984). Restated, the risk of loss stays with the owner of the item until it is finally paid. Final payment is defined by Section 4–213. That section provides that final payment is frequently defined by "clearing house rule or agreement." In this case the applicable agreement between the Bank and the Debtor allowed for charge-back. Therefore, the Bank's right to charge-back the provisional settlement established in Section 4–212 is available.

3. First City's chargebacks on the accounts during the period from October 23, 1986 to January 21, 1987 did not violate 11 U.S.C. § 553(a)(2).

4. Offsets against net funds First City seeks to have approved post-petition are subject to 11 U.S.C. § 553. *In re Williams*, 61 B.R. 567 (Bankr.N.D.Tex. 1986).

5. The *gross* cash on hand in the accounts as of the *petition* date is a fund owed to Debtor by First City Bank. That fund or chose in action representing right to payment thereof is property of the estate in which Debtor has legal title, subject to defeasance by settlements. 11 U.S.C. § 541(a). This Court extends the decision further than the Opinion of the Court in *Equitable Bank of Littleton.* To allow parties who dealt with a debtor-in-possession, pre-petition, to continue subjectively crediting or off-setting these credit card settlements post-petition would defeat the definition of property of the estate and the policy of the automatic stay. In the opinion of this Court, the net effect of Article 4.212 of the Texas Uniform Commercial Code, absent bankruptcy, is that the funds remaining *after all settlements* of the Bank as to customer claims would be property of the depositor (now Debtor). The Bankruptcy Code refers us to state law for the definition of property rights. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). As the Bank holds the funds subject to settlements, the Bank is bound by 11 U.S.C. § 362(a)(7)[1] and 11 U.S.C. § 553(a), and must seek Court approval to accomplish set-off. Although the account in issue is of a special nature under banking law, there was created a debtor-creditor relationship, wherein the bank is obligated to repay the depositor-creditor. *In re Williams, supra.* On the petition date, the Debtor "owed" the Bank the ultimate "settlement" funds which the Bank became obligated to pay; the Bank owed the Debtor the "net" funds after ultimate settlement.

Under the provision of 11 U.S.C. § 506(a), the Bank's right of offset became a secured claim against the property of the estate in the Bank's account. *In re Williams, supra.* Likewise, under Section 363(a) of the Code, the funds in the account or accounts were "cash collateral" for payment of the Bank's secured claim, and the use thereof by Debtor prohibited. *In re Williams, supra.*

\* \* \* \* \* \*

1. 11 U.S.C. § 362(a)(7):

(a) Except as provided in subsection (b) of this section, a petition filed under § 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 USC 78eee(a)–(3)), operates as a stay, applicable to all entities, of—

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor.

6. Plaintiff is entitled to recover from Defendant as follows: the Trustee shall recover the sum of $100,000 previously turned over to the Trustee by First City Bank, *less* $18,992.87.

7. The Motion to Lift Stay by First City Bank is granted subject to paragraph 6 above.

The Court reserves the right to make further Findings of Fact and Conclusions of Law. Any Finding of Fact that is found to be a legal conclusion is so deemed. Any Conclusion of Law found to be a Finding of Fact is so deemed.