Daniel J. SHERMAN, Trustee, Plaintiff–Appellant,

v.

FIRST CITY BANK OF DALLAS, Defendant–Appellee.

Civ. A. No. CA3–88–1802–D.

Bankruptcy No. 387–30381–A–7.

United States District Court, N.D. Texas, Dallas Division.

April 20, 1989.

---

**334**

Toby L. Gerber and Bruce W. Akerly, Dallas, Tex., for plaintiff-appellant.

John Maxfield, of Stigall & Maxfield, Dallas, Tex., for defendant-appellee.

FITZWATER, District Judge:

A chapter 7 trustee appeals the bankruptcy court's judgment permitting a bank to set off credit card chargebacks against sums that the debtor had deposited with the bank. Finding no abuse of discretion, the court affirms the judgment.

## I.

United Sciences of America, Inc. ("United Sciences") was engaged in the business of selling vitamins, nutrients, and other health food products to the general public. United Sciences permitted customers to make purchases with Visa and Mastercard charge cards. In May 1986, it entered into a merchant/bank agreement with defendant-appellee, First City Bank of Dallas ("First City"), pursuant to which First City accepted credit card deposits, credited United Sciences' bank accounts, and collected the funds from the downstream banks that issued the charge cards. First City was obligated to compensate the issuing banks for certain credits given to their cardholders—such as when a cardholder rescinded a purchase from United Sciences. Pursuant to the pertinent agreements, a credit card customer had 120 days from the date of receipt of his statement to protest the purchase to the bank that issued the credit card. The issuing bank was obligated to credit the customer's account and the acquiring bank (First City) was required to reimburse the issuing bank. The agreement between First City and United Sciences provided that United Sciences was obligated, in turn, to indemnify First City for such "chargebacks."

United Sciences' financial condition deteriorated during the remainder of 1986 and, on January 21, 1987, United Sciences filed a voluntary chapter 7 petition. Plaintiff-appellant, Daniel J. Sherman ("Trustee"), was appointed trustee. During the 90-day prepetition period (October 23, 1986–January 20, 1987), United Sciences deposited in excess of $2 million into bank accounts at First City. First City charged back $62,619.43 pursuant to the merchant/bank agreement. Also during the 90-day period, First City placed restrictions on United Sciences' bank accounts at First City, at one point permitting withdrawals only for payroll and credit card chargebacks. On January 13, 1987, First City established a general ledger account for United Sciences for the purpose of controlling credit card chargebacks. After January 16, 1987, First City accepted no further charge card deposits from United Sciences.

On the petition date United Sciences had the sum of $202,387.65 on deposit with First City. The Trustee and First City

agreed that First City would transfer $100,000 of this sum to the Trustee. The Trustee contended he was entitled to recover the balance of the funds, as well, and filed an adversary proceeding to compel turnover. First City asserted that it was entitled to any portion of the remaining amount needed to cover chargebacks that might arise from prepetition credit card deposits. Although First City determined that the remaining sum would adequately cover such chargebacks, it eventually charged back $18,992.87 in excess of that sum to United Sciences. First City moved the bankruptcy court to lift the automatic stay to permit the bank to set off against its debt to United Sciences (the funds on account) the credit card chargebacks. It counterclaimed to recover the $18,992.87 in excess chargebacks.

Following a combined trial of the adversary proceeding and final hearing on the lift stay motion, the bankruptcy court agreed that First City had a right of setoff. It entered judgment awarding First City the balance of $102,387.65 on hand at the bank and the sum of $18,992.87 (with interest), which represented the amount of chargebacks that exceeded the funds in the accounts. The court supported its judgment with findings of fact and conclusions of law. *See In re United Sciences of America, Inc.*, 84 B.R. 79, 80–83 (Bankr.N. D.Tex.1988).

The Trustee filed this appeal, contending: first, the setoff violates 11 U.S.C. § 553(a)(2) because the chargebacks are claims transferred by third parties to First City within the 90–day period that preceded the commencement of the debtor's bankruptcy case and while United Sciences was insolvent; second, the chargebacks were made while the debtor was insolvent and were made for the special purpose of obtaining a right of setoff, in violation of § 553(a)(3); third, any post-petition setoff is precluded by an absence of mutuality, as required by § 553(a), because the post-petition claim was offset against a prepetition debt; and fourth, the bankruptcy court erred by applying UCC Article 4 to the case.[1]

## II.

In this appeal from the bankruptcy court's judgment that approves a setoff, the court defers to the bankruptcy court's factual findings under the clearly erroneous standard, *In re Ambassador Park Hotel, Ltd.*, 61 B.R. 792, 799 (N.D.Tex.1986), reviews the bankruptcy court's conclusions of law de novo, *id.* at 798–99, and determines whether to uphold the bankruptcy court's approval of the setoff under an abuse of discretion standard, *In re Braniff Airways, Inc.*, 42 B.R. 443, 448 (Bankr.N. D.Tex.1984). The court finds no abuse of discretion in the bankruptcy court's decision.

11 U.S.C. § 553[2] provides that the rights of a creditor to set off a prepetition mutual debt owed by the creditor to a title 11

---

1. The Trustee also appeals the court's decision to sanction the Trustee's counsel pursuant to Fed.R.Bankr.P. 9011. The court need not reach this question. The bankruptcy court did impose such a sanction in the unpublished version of its memorandum opinion but omitted this part of its decision from the published report. Counsel for the Trustee acknowledged at oral argument of this appeal that no such sanction has yet been imposed and that counsel can appeal such an order if entered.

2. 11 U.S.C. § 553:
   (a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—
   (1) the claim of such creditor against the debtor is disallowed other than under section 502(b)(3) of this title;
   (2) such claim was transferred, by an entity other than the debtor, to such creditor—
   (A) after the commencement of the case; or
   (B)(i) after 90 days before the date of the filing of the petition; and
   (ii) while the debtor was insolvent; or
   (3) the debt owed to the debtor by such creditor was incurred by such creditor—
   (A) after 90 days before the date of the filing of the petition;
   (B) while the debtor was insolvent; and
   (C) for the purpose of obtaining a right of setoff against the debtor.

debtor against a prepetition claim of the creditor against the debtor are unaffected by the Bankruptcy Code except as provided in §§ 553, 362, and 363. Section 553 is not an independent source of law governing setoff. "[I]t is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of nonbankruptcy law." *United States ex rel. I.R.S. v. Norton,* 717 F.2d 767, 772 (3d Cir.1983); *In re Williams,* 61 B.R. 567, 571 (Bankr.N.D.Tex.1986); *see also* 4 *Collier on Bankruptcy* ¶ 553.08[2] (15th ed. 1987) ("1978 Code ... recognizes, rather than creates, setoffs").

### A.

The court considers first the Trustee's contention that the setoff violates § 553(a)(2) because the credit card chargebacks are claims transferred by third parties to First City within the 90–day period that preceded the commencement of the debtor's bankruptcy case and while United Sciences was insolvent.

The Trustee reasons that the chargebacks violate the Code because cardholders who failed to receive, or were otherwise dissatisfied with, goods provided by the debtor received a refund or credit from First City and in turn transferred to First City their claims against United Sciences.[3] The Trustee thus contends the bankruptcy court clearly erred when it found that "First City did not obtain by transfer claims of other parties for the purpose of off-set." 84 B.R. at 81.

It appears the bankruptcy court concluded there was no transfer of claims because it determined that the chargeback process was governed by UCC Article 4. The charges for which First City gave United Sciences credit were "provisional settlements" and therefore were not claims transferred in violation of § 553(a)(2). *See* 84 B.R. at 81–82. This court need not determine the applicability of Article 4 to the present case; it can affirm a correct judgment of the bankruptcy court for reasons not given by the court below or advanced to it. *Cimmaron Oil Co. v. Cameron Consultants, Inc.,* 71 B.R. 1005, 1011 (N.D.Tex.1987). The court finds no violation of § 553(a)(2), and thus no abuse of discretion in the decision to allow a setoff, even without resorting to UCC Article 4.

■ Under the common law—which survives § 553(a) unless expressly abrogated—a surety[4] or guarantor of a debtor can set off against a debt owed to the debtor a claim for reimbursement for a payment made by the surety or guarantor to another creditor of the debtor. *Hayden v. Standard Accident Insurance Co.,* 316 F.2d 598, 602 (9th Cir.1963); *see also* 4 *Collier* at ¶ 553.04[5]. The surety acquires the claim by reason of a direct obligation and thus has a right to a setoff. *See Bel Marin Driwall, Inc. v. Grover,* 470 F.2d 932, 936 (9th Cir.1972). Mutuality exists, as required by § 553(a), because "the surety's claim for reimbursement and the debtor's debt are owing between the same parties." *In re J.A. Clark Mechanical, Inc.,* 80 B.R. 430, 432 (Bankr.N.D.Ohio 1987) (citing 4 *Collier* at ¶ 553.04[5]).

■ The record below reflects that First City obligated itself to compensate the issuing banks of Visa and Mastercard cardholders for the debts (credit card refunds) of United Sciences.[5] Pursuant to the merchant/bank agreement, United Sciences was obligated to indemnify or reimburse First City for the amounts of these chargebacks. (Joint Ex. 1, ¶ 24). First City is entitled to be treated as a surety, for pur-

---

3. Actually, a cardholder obtained his refund from the bank that issued the charge card. The issuing bank was, in turn, reimbursed by First City.

4. Under Texas law, a surety is one who agrees to be responsible for the debt of another. *A/S Hydraulico Works v. Fort Worth & Denver Ry. Co.,* 483 F.Supp. 518, 520 (S.D.Tex.1980); *Crimmins v. Lowry,* 691 S.W.2d 582, 585 (Tex.1985).

5. First City vice president Austin Bolton testified at trial that if a credit cardholder desired to rescind a purchase, regardless whether the grounds for rescission were valid, the credit cardholder was entitled to have his account credited by the bank that issued the customer's card. In turn, the issuing bank charged First City, which became obligated to reimburse the issuing bank. (Tr. 11–14, 30–31).

poses of applying the Bankruptcy Code, because it agreed to be responsible for United Sciences' obligations to its credit card customers. As a surety, it had the right to set off against its debt to United Sciences the payments it made to other creditors of the debtor—in this case the credit card customers (through their issuing banks) who rescinded purchases of United Sciences products.

Even if the claims of the cardholders may properly be considered "transferred" claims, they were not transferred within the meaning of § 553(a)(2). This prohibition of a setoff applies where "the creditor [has] attempted to obtain a preference or put itself in a preferred position relative to other creditors." 4 *Collier* at ¶ 553.01[2]. Section 553(a)(2) should not be applied "to invalidate the setoff of claims involuntarily acquired by the creditor or acquired under a contract entered into before the 90–day period." *Id.* In the present case, First City and United Sciences contracted prior to the 90–day prepetition period that First City would have the right to charge back uncollectible credit card charges. First City involuntarily acquired its claim against United Sciences. The claims of the credit cardholders were therefore not "transferred" to First City within the meaning of § 553(a)(2) and the bankruptcy court's judgment did not run afoul of the Code.

### B.

The Trustee also attacks the propriety of the judgment below on the ground that the debt owed to First City was incurred for the purpose of obtaining a right of setoff against United Sciences, in violation of § 533(a)(3).

The bankruptcy court found that "First City did not accumulate funds in the accounts for the purpose of obtaining a right of setoff against [United Sciences]." 84 B.R. at 81. The Trustee contends this finding is clearly erroneous because the trial testimony of First City's witness establishes that the bank accounts in question were originally set up for chargebacks and the parties stipulated in the pretrial order that

6. Testimony of Austin Bolton (Tr. 30).

First City established a "general ledger account" to control customer chargebacks.

Section 553(a)(3) "is intended to cover the problem of 'buildups,' or the setoff of bank deposits made by the debtor within the 90 days prior to bankruptcy. Where such deposits were made by the debtor and accepted by the bank with the intent to allow the bank to setoff, the setoff will be avoidable under section 553(a)(3)." 4 *Collier* at ¶ 553.08[2]. The appropriate inquiry is a subjective determination whether the purpose for creating the debt in question was to obtain a setoff for the creditor and to improve the creditor's position among other creditors. *In re Southern Industrial Banking Corp.,* 809 F.2d 329, 332 (6th Cir. 1987).

This court does not think it unreasonable that the Trustee, pursuant to his obligation to marshal the assets of the estate and in view of the purpose for § 553(a)(3), sought to vitiate First City's claim of setoff on the ground of improper accumulation. The trial record reflects that First City became concerned about United Sciences' financial relationship with the bank and began on January 6, 1987—approximately two weeks prior to the petition date—to accumulate funds to protect chargebacks and to pay payroll. On January 13 First City opened a general ledger account partly for the purpose of protecting its right of chargeback. As of January 16, United Sciences could not withdraw funds without First City's consent. A finding that the creditor was aware of the debtor's financial difficulties, for example, may support the conclusion that the creditor incurred the debt for the purpose of setoff. *See Union Cartage Co. v. Dollar Savings & Trust Co.,* 38 B.R. 134, 138–40 (Bankr.N.D.Ohio 1984).

Nevertheless, the yardstick for reviewing this finding of fact is the deferential clearly erroneous standard. There is ample evidence in the trial record to support the bankruptcy court's finding.

First City was obligated to pay an unlimited number [6] of chargebacks presented to it by issuing banks. The merchant/bank

agreement (Joint Ex. 1, ¶ 20) expressly gave First City the right to charge back to United Sciences the payments made. These rights and obligations arose well-before the petition date. The bankruptcy court thus could properly have found that First City did not create the debt for the purpose of obtaining a setoff or to improve its position among other creditors. The debt arose pursuant to a prepetition agreement and by virtue of the conduct of cardholders who were not controlled by First City and who acted in their own respective interests, rather than for the purpose of assisting First City in obtaining a right of setoff. The bankruptcy court did not clearly err by viewing First City's conduct as having been undertaken in the usual course of banking practices[7] rather than for a purpose that would abrogate the right of setoff.

### C.

The Trustee argues third that the setoff violates § 553 because the debts lack mutuality. The Trustee asserts that some of the chargebacks constitute post-petition debts owed by United Sciences that First City seeks to set off against the prepetition debt owed by First City to United Sciences.

As of January 16, 1987—five days prior to the petition date—First City accepted no more credit card deposits made by United Sciences. It simply awaited the conclusion of the 120–day period during which a cardholder could cancel a purchase. First City's obligation to reimburse the cardholders' issuing banks, and United Sciences' obligation to compensate First City for the chargebacks, arose prepetition. The only event that transpired during the post-petition period was the determination of the extent of liability.

In *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1036 (5th Cir.1987), which involved in part a § 553 mutuality question, the Fifth Circuit approved the holdings of cases like *In re Nickerson & Nickerson, Inc.*, 62 B.R. 83 (Bankr.D.Neb.

1986), that "the right of setoff may be asserted in bankruptcy even though one of the debts involved is absolutely owing but not presently due when the petition is filed." *Id.* at 85. The *Braniff* court also quoted with approval the reasoning of *In re Morristown Lincoln–Mercury, Inc.*, 42 B.R. 413 (Bankr.E.D.Tenn.1984), that § 553 does not prohibit a prepetition creditor's claim that is unmatured as of the petition date from being offset against a debtor's prepetition claim. *Id.* at 417–18 (cited in *Braniff*, 814 F.2d at 1036). The Fifth Circuit concurred with *Morristown*'s conclusion that the "character of a claim is not transferred from pre-petition to postpetition simply because it is contingent, unliquidated, or unmatured when the debtor's petition is filed." *Id.* (quoting *Morristown*, 42 B.R. at 418).

In the present case United Sciences absolutely owed First City, on the petition date, any sums for chargebacks incurred by reason of timely rescissions made by customers of United Sciences. The debt could be considered contingent, unmatured, and not yet due until the customers triggered the chargebacks by cancelling purchases they had made prepetition. Even so, as of the petition date United Sciences owed the amount of these chargebacks. Mutuality was not lacking and the bankruptcy court did not err in entering judgment favorable to First City.

### D.

The Trustee finally contends that the bankruptcy court erred by analyzing this case pursuant to Article 4 of the Texas UCC. This court need not approve the bankruptcy court's analysis in order to affirm the judgment on appeal. The court's decision thus should not be viewed as approving the application of UCC Article 4 to the facts presented.

AFFIRMED.

---

7. That the bankruptcy court analyzed the facts in accordance with UCC Article 4 indicates its view that the procedures employed by First City were those normally utilized by a commercial bank and not undertaken for a purpose proscribed by § 553(a)(3).