In the Matter of UNITED SCIENCES OF AMERICA, INC., Debtor.

**Daniel J. SHERMAN, Appellant,**

v.

**FIRST CITY BANK OF DALLAS, Appellee.**

No. 89–1457

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1990.

Toby L. Gerber, Bruce W. Akerly, Johnson & Swanson, Dallas, Tex., for appellant.

John F. Maxfield, Stigall & Maxfield, Dallas, Tex., for appellee.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this bankruptcy appeal we must decide whether a bank obtains an impermissible set-off in violation of 11 U.S.C. § 553(a) when it exercises its contractual right during the prohibitive period to debit "chargebacks" against the commercial account of a merchant depositor for credit card refunds. The appellant Sherman contends that the district court erred in holding that the appellee First City Bank did not violate 11 U.S.C. § 553(a).[1] We affirm.

The debtor, United Sciences of America, Inc. ("USA") sold vitamins, nutrients, and other health food products. In order to permit its customers to pay by using Visa and MasterCard credit cards, in May 1986, First City and USA entered into a Merchant/Bank Agreement for Electronic Point of Sale Services covering the credit card transactions between USA and its customers. Under the agreement USA agreed to open an account ("master account") at First City, to which First City would deposit proceeds from credit card transactions and from which it would debit "chargebacks," i.e., credit card refunds. In practice, First City would credit USA's account for credit card transactions and then would collect the funds from the particular bank that issued the credit card to the USA customer ("issuing bank"). When a USA customer rescinded a purchase, the issuing bank credited the customer's account and then charged back First City ("acquiring bank"), pursuant to the Visa and MasterCard operating regulations, which were in-

---

1. Section 553(a) reads in pertinent part:

   (a) ... this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, except to the extent that—

   .   .   .   .   .

   (2) such claim was transferred, by an entity other than the debtor, to such creditor—
   (A) after the commencement of the case; or

   (B)(i) after 90 days before the date of the filing of the petition; and
   (ii) while the debtor was insolvent; or
   (3) the debt owed to the debtor by such creditor was incurred by such creditor—
   (A) after 90 days before the date of the filing of the petition;
   (B) while the debtor was insolvent; and
   (C) for the purpose of obtaining a right of set-off against the debtor.

corporated by reference into the Merchant/Bank Agreement. First City, in turn, debited USA's account for the chargebacks pursuant to the Merchant/Bank Agreement.

USA opened other accounts at First City to cover, among other things, payroll, accounts payable and commissions. These accounts were zero-balance accounts; that is, money was withdrawn from the master account and deposited into these accounts to cover checks drawn upon them.

In October 1986, First City became concerned about USA's deteriorating financial condition. On December 26, 1986, for the first time, the bank refused to honor a check drawn by USA on its account. On January 2, 1987, First City threatened to cancel the Merchant/Bank Agreement, stating that by failing to deliver merchandise to its customers, USA had breached the agreement. Such nondelivery resulted in chargebacks for which USA was increasingly incapable of paying because of its financial condition. On January 13, First City notified USA that effective January 16, it would suspend the Merchant/Bank Agreement and stop accepting credit card deposits. Additionally, First City established a "general ledger account" for USA whereby the bank gained control over USA's funds on deposit for the purpose of paying payroll and executing chargebacks; USA could withdraw funds only to make payroll and only with First City's express consent.

On January 21, 1987, USA filed a chapter 7 bankruptcy petition. During the ninety-day pre-petition period, First City debited USA's account $62,619.43, which it had paid to issuing banks for chargebacks. First City also refunded in excess of $120,-000 to issuing banks for chargeback claims presented post-petition but which, it argues, arose pre-petition.

The bankruptcy court held that both section 4.212(a) of the Texas Uniform Commercial Code and 11 U.S.C. § 553(a) sanction First City's pre-petition and post-petition debits against USA's account as allowable set-offs. 84 B.R. 79. The district court affirmed, but only on the basis of 11 U.S.C. § 553(a). 99 B.R. 333.

On appeal, Sherman attacks the district court's application of 11 U.S.C. § 553(a) to the facts of this case. Specifically he argues that set-off was impermissible for the following reasons: (1) the respective debts of First City and USA were not mutual, as required by 11 U.S.C. § 553(a), because First City was seeking to set off its debt to USA (funds in USA's bank account) with a debt First City owed to the issuing banks (for refunds that the issuing banks had credited to their card holders), third parties to whom USA was not indebted; (2) First City was seeking to set off its pre-petition debt to USA with USA's post-petition debt to First City (arising from chargebacks effectuated one hundred twenty days following the filing of USA's bankruptcy petition) in violation of the requirement of 11 U.S.C. § 553(a) that the "mutual" debts "ar[i]se before the commencement of the case"; (3) First City was seeking a set-off based upon the refunds that issuing banks paid to USA's credit card customers, which claims were then transferred to First City by the issuing bank, in violation of section 553(a)(2)(B); (4) First City established an account controlled solely by it (the "general ledger account") for the purpose of establishing a fund to set off against USA's debt to it in violation of 11 U.S.C. § 553(a)(3)(C).

We review the district court's judgment for errors of law and clearly erroneous findings of fact. *Matter of Missionary Baptist Foundation*, 712 F.2d 206, 209 (5th Cir.1983). Sherman first asserts the debts owing between First City and USA were not "mutual" and therefore the set-off violated section 553(a). He argues that the district court erred in characterizing, under the Merchant/Bank Agreement, First City as a "surety" with respect to USA's debt to the credit card customers and thus concluding that the chargebacks constituted a USA debt to the bank so as to satisfy mutuality. *See* 4 *Collier* § 553.04[5]. Rather, Sherman contends that the Merchant/Bank Agreement between USA and First City established only an indemnitor/indemnitee relationship between them, which does not give rise to

mutuality between them as to the actual debt to the credit card holder; nevertheless, even assuming First City is a surety for the credit card debts under the Merchant/Bank Agreement, the surety relationship exists between First City and the issuing banks and First City is subrogated only to the rights of the issuing banks against USA, not to the rights of USA's credit card holders against USA since First City owes no legal obligation of any kind to the credit card holders, as surety or otherwise. Sherman concludes, therefore, that because the refund is USA's debt to its credit card customers, and the chargeback is First City's debt to the issuing banks, no mutuality exists between First City and USA as to the chargebacks.

Sherman misconstrues the nature of the mutuality requirement of section 553(a). The requirement of mutuality is "that each party ... own his claim in his own right severally, with the right to collect in his own name [and] in his own right and sever-

ally." *Braniff Airways, Inc. v. Exxon Co. USA*, 814 F.2d 1030, 1036 (5th Cir.1987). The mutuality requirement is designed to protect against "triangular" set-off; for example, where the creditor attempts to set off its debt to the debtor with the latter's debt to a third party. *See Elcona Homes Corp. v. Green Tree Acceptance, Inc.*, 863 F.2d 483, 486 (7th Cir.1988).

■ In the instant case, the Merchant/Bank Agreement created the mutuality of the debts between First City and USA. Pursuant to paragraph 12 of the agreement, USA opened an account with First City to which the bank deposited the proceeds of credit card transactions.[2] This "master account" constituted First City's debt to USA and gave rise to a claim against First City owned by USA in its own name and in its own right. Pursuant to paragraph 20, First City had the right to debit any credit card chargebacks against USA's account.[3] Pursuant to paragraph

**2.** Paragraph 12 of the Merchant/Bank Agreement provides:

Settlement: Merchant will either maintain a commercial checking account with Bank or will make other suitable arrangements to enable Bank to credit funds to merchant pursuant to the following provisions. Bank will credit to a commercial checking account designated by merchant the amount of all authorized and completed Transactions, minus the amount of any chargebacks or merchandise credits/price adjustments provided for herein, provided, however, that Merchant will not receive credit for any sales draft or Transaction with respect to which Merchant has not conformed in every respect to requirements predescribed in this Agreement and the Merchant Operating Guide.

**3.** Paragraph 20 of the Merchant/Bank Agreement provides:

**Chargeback Right.** Merchant shall follow the procedures set in this Agreement and in the Merchant Operating Guide for the handling of all Transactions and failure to do so shall authorize Bank to charge to Merchant an amount equal to the face amount of each such Transaction together with expenses incurred by or on behalf of Bank as a result thereof.

A. Bank shall have the right to charge back a Transaction involving the use of a Visa Card or MasterCard for the reasons set forth from time to time by the rules and regulations of Visa U.S.A., Inc. and MasterCard International, Inc. as the applicable case may be including but not limited to the reasons set forth below:

(1) Expired card used or card used is on any applicable Warning Notice on restricted cards;

(2) Transaction exceeds floor release limit;

(3) Sales draft illegible or sale is executed without authority;

(4) Cardholder disputes quality or delivery of merchandise or quality or performance of services covered by sale;

(5) Extension of credit for merchandise or services violates, or is alleged to violate, any applicable federal or state law, rule, or regulation;

(6) Transaction covered by sales draft has been cancelled or rescinded by the Cardholder (whether or not a credit voucher has been delivered to Bank);

(7) Merchant, if extending credit for merchandise sold or services performed as a service station, shall have failed specifically to indentify [sic] and note on the sales draft the license of the vehicle of the Credit Card user; or

(8) The circumstances surrounding the transaction constitute a breach of any of any [sic] of the terms or conditions of this Agreement.

B. Bank shall have the right to charge back a Transaction involving the use of a Debit Card for the reasons set forth from time to time by the rules and regulations of Financial Interchange, Inc. (also known as "Pulse") as the applicable case may be including but not limited to the reasons set forth below:

(1) Cardholder disputes the Transaction and Merchant is unable to produce a copy of

21, USA authorized First City to charge its account for chargebacks and other fees.[4] These chargebacks constituted USA's debt to First City. Under paragraph 24, USA guaranteed this debt by agreeing to indemnify First City for any damage, loss, expense, or liability "arising out of or in connection with" any violation of the agreement.[5] Therefore, when First City exercised its contractual right to debit USA's account for chargebacks paid to the issuing banks, it asserted this claim against USA pursuant to the Merchant/Bank Agreement in its own name and in its own right, regardless of whether it was in fact a surety or an indemnitee of USA. Thus we conclude that the mutuality requirement of section 553(a) is satisfied.

Second, Sherman argues that the chargebacks in the amount of $121,380.52 "arose" post-petition and, therefore, also violate the requirement of section 553(a) that the mutual debt arise before the commencement of the case. Sherman argues that this debt did not arise until the credit card holders rescinded their purchases and claimed a refund, which occurred after the commencement of the case.

Again Sherman misconstrues section 553(a) and the nature of the obligation USA owed to First City. Section 553(a) requires that to set off a mutual debt, the debt must "arise before the commencement of the case." The Code defines "debt" as a "liability on a claim." 11 U.S.C. § 101(11). It defines claim as the "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." 11 U.S.C. § 101(4)(A). As we have already indicated, the Merchant/Bank Agreement gave First City a right to payment from USA for chargebacks executed by the issuing bank. This right to payment, and hence USA's debt to First City, arose not later than when the charged back item was initially credited to USA's account, regardless of when the issuing banks actually asserted their chargeback claims against First City pursuant to the Visa and MasterCard operating regulations. USA's debt to First City for charges paid post-petition, although "absolutely owing," was thus simply unmatured at the time of the petition. *See Braniff,* 814 F.2d at 1036.

■ Sherman next argues that when a USA customer rescinded its credit card transaction, the issuing bank credited the USA's customer's account and then the customer's claim against USA was "transferred" to First City from the issuing bank; such "transfers," it is argued, violated 11 U.S.C. § 553(a)(2). Like the district court, we do not find that First City's claim against USA was transferred to it within the meaning of section 553(a)(2). Section 553(a)(2) is designed to prevent creditors from obtaining a preference by purposely

a validly executed and legible sales draft bearing a valid authorization approval code; or
(2) The circumstances surrounding the transaction constitute a breach of any of the terms or conditions of this Agreement.

**4.** Paragraph 21 of the Merchant/Bank Agreement provides:
21. Fees: Merchant agrees to pay to bank fees in the amount shown on Exhibit "A", as attached hereto. Merchant authorizes Bank to charge Merchant's account referred to in Paragraph 12 for any of the following reasons: (i) fees owed to Bank, (ii) correction of mathematical errors, (iii) chargebacks under this Agreement, and (iv) credits given for merchandise returns and other price adjustments pursuant to Paragraphs 19 and 20 of this Agreement.

**5.** Paragraph 24 of the Merchant/Bank Agreement provides:

24. Indemnification: Merchant shall indemnify and hold Bank harmless from any and all damages, losses, expenses (including attorney's fees), liabilities and claims by cardholders or others arising out of or in connection with:
(a) Merchant's failure to fulfill any of the terms and conditions of this Agreement or any other action or inaction by Merchant;
(b) Any violation or alleged violation of any applicable federal or state law, rule, or regulation resulting from any act or omission of Merchant or its agents and employees;
(c) Any dispute concerning the quality, condition or delivery of any merchandise, or the quality of performance of any service covered by the sales draft hereunder; or
(d) Any other dispute concerning any act or omission of merchant, its agents and employees.

acquiring a claim from a third party within the ninety-day pre-petition period. *See* 4 *Collier* § 553.08[2]. Here, First City did not attempt to acquire a claim from the issuing bank against USA prior to bankruptcy; rather, First City's claim existed pursuant to and arose from the contractual provisions (paragraphs 12, 20, and 21) of the Merchant/Bank Agreement, entered into long before USA became insolvent, which created a debt of USA to First City and which provided First City with the right to debit USA's account for chargebacks. We therefore do not find that First City has acted impermissibly to acquire a preference in violation of section 553(a)(2).

■ Finally, Sherman argues that the general ledger account First City established on January 13, 1987 to control chargebacks and make payroll payments contravened section 553(a)(3). Section 553(a)(3)(C) prevents a creditor from incurring a debt "for the purpose of obtaining a right of set-off against the debtor." It is designed to prevent a bank from undertaking a build-up of the debtor's account in order to secure a preference. *See* 4 *Collier* § 553.15[3]. Whether a creditor incurred a debt for the purpose of obtaining a right of set-off is a factual finding that we review according to a "clearly erroneous" standard. *In re Southern Industrial Banking Corp.*, 809 F.2d 329, 332 (6th Cir.1987). The district court reviewed and upheld the bankruptcy court's finding that the bank did not establish the general ledger account for the purpose of set-off. The court noted that First City had a contractual right to debit chargebacks from USA's account and concluded that, in establishing the general ledger account, it was acting in the ordinary course of business to protect its right by insuring sufficient funds were in USA's account for the recurring chargebacks, not to obtain a right of set-off. We find no contrary evidence and therefore will not upset the district court's finding.

6. Because we affirm on the basis of the district court's application of 11 U.S.C. § 553(a), we need not and do not decide whether the set-off

For the foregoing reasons, the judgment of the district court is

AFFIRMED.[6]

also is permissible under section 4.212(a) of the Texas Uniform Commercial Code.