**In re AFFILIATED FOOD STORES, INC., Debtor.**

**Bankruptcy No. 390–36169 RCM–11.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

Jan. 24, 1991.

Timothy J. Vineyard, Dallas, Tex., for debtor.

Nicholas Ward, San Francisco, Cal., for movant.

## MEMORANDUM OPINION ON MOTION OF MASS MERCHANDISERS, INC. FOR RELIEF FROM THE STAY

ROBERT C. McGUIRE, Chief Judge.

Pursuant to Bankruptcy Rule 7052, following are the Court's Findings of Fact and Conclusions of Law in connection with the motion by Mass Merchandisers, Inc. ("MMI") for relief from the stay:

The stay will lift to allow the setoff prayed for.

MMI is a supplier of non-food inventory to the member stores of Affiliated Food Stores, Inc. ("Debtor"), pursuant to that certain Agreement dated December 31, 1986 between Debtor and MMI, as amended by the First Amendment to Agreement dated as of March 20, 1987 (the "Agreement").

Pursuant to the Agreement, Debtor sold certain inventory and equipment to MMI, and agreed to sponsor MMI as a provider of non-food inventory to Debtor's member grocery stores (Agreement, ¶¶ 1 and 6). In connection with the Agreement, Debtor and MMI entered into that certain Central Billing Agreement dated August 15, 1988. Under the terms of both agreements, MMI delivers non-food inventory to the member stores, and forwards the invoices to Debtor. Debtor is directly liable to MMI for all such invoices (Agreement, p. 7, Central Billing Agreement, ¶¶ II and III).

As part of the consideration for Debtor's ongoing obligation to sponsor MMI pursuant to the Agreement, MMI is obligated to pay Debtor installments of $500,000, on February 23, 1991, and February 23, 1992, *i.e.*, a total of $1 million (the "February Payments") (Agreement, ¶ 6(c)).

The Agreement, at ¶ 8, provides that Debtor may, upon 120 days written notice, unilaterally terminate the Agreement and cease its sponsorship of MMI without further recourse to Debtor. There was no evidence that such a termination notice has been sent.

MMI claims that Debtor is indebted to MMI for $2,106,219.47 of pre-petition debt; while Debtor does not agree to the amount, Debtor does agree that it is indebted for some amount of pre-petition debt under the Central Billing Agreement. For purposes of this motion, the Court finds that Debtor's pre-petition debt to MMI exceeds $1 million.

Under § 553(a)

[t]o maintain a right of setoff, the creditor must prove the following:

    1. A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the bankruptcy case.

2. The creditor has a claim against the debtor which arose prior to the commencement of the bankruptcy case.

3. The debt and the claim are mutual obligations.

*In re Nickerson & Nickerson, Inc.,* 62 B.R. 83, 85 (Bankr.D.Neb.1986). The debts and claims do not have to be of the same character before setoff may be applied. *In re Braniff Airways, Inc.,* 42 B.R. 443, 447 (Bankr.N.D.Tex.1984). The only requirements are that the debts and claims be mutual and pre-petition. *Braniff Airways, Inc. v. Exxon Co., U.S.A.,* 814 F.2d 1030, 1035 (5th Cir.1987) (*"Braniff"*).

### Whether MMI's Indebtedness is Pre–Petition

The first question is whether MMI's debt to Debtor is pre-petition. The debt was created at the time of entry into the Agreement.

A "debt" is defined as "a liability on a claim". 11 U.S.C. § 101(11). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, natural, unnatural, disputed, undisputed, legal, equitable, secured, or unsecured ...". 11 U.S.C. § 101(4).

When the Agreement was entered into, MMI became liable for the $500,000 in payment due on February 23, 1991, and the $500,000 payment due on February 23, 1991, unless one of two contingencies occurred first—either Debtor did not perform under the Agreement (Agreement, ¶ 6), or Debtor terminated the Agreement (Agreement, ¶ 8). See the definition of "debt" and "claim" cited above, *i.e.,* a debt is a liability on a claim, and a claim is a right to payment, whether or not contingent. *Braniff, supra,* at 1036 and *Collier on*

*Bankruptcy,* ¶ 553.10, p. 553–51 (15th ed.), discuss debt in terms of "absolute liability", notwithstanding the definitions of "debt" (§ 101(11)) and "claim" (§ 101(4)) as encompassing a "contingent" claim. Also see, Black's Law Dictionary (5th ed.) for the following definitions:

> **Contingent.** Possible, but not assured; doubtful or uncertain; conditioned upon the occurrence of some future event which is itself uncertain, or questionable.

> \* \* \* \* \* \*

> **Contingent claim.** One which has not accrued and which is dependent on some future event that may never happen.

The fact that a debt owed to Debtor is subject to conditions precedent or subsequent, appears to not transform a pre-petition obligation into a post-petition obligation. *In re Matthieson,* 63 B.R. 56, 59–60 (D.Minn.1986); *In re Parrish,* 75 B.R. 14, 16 (N.D.Tex.1987).[1]

A creditor has a right to offset mutual claims arising under a prepetition contract without regard to the executory nature of the contract. *In re Buske,* 75 B.R. 213, 216 (Bankr.N.D.Tex.1987). The character of a claim is not transformed from pre-petition to post-petition because it is contingent, unliquidated, or unmatured when a debtor's petition is filed. *Sherman v. First City Bank of Dallas,* 99 B.R. 333, 338 (N.D.Tex.1989), *aff'd,* 893 F.2d 720 (5th Cir. 1990).

### The Applicability of the New Entity Theory

In *NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 528 and 544, 104 S.Ct. 1188, 1197 and 1206, 79 L.Ed.2d 482 (1983), the court discusses the "new entity theory".[2] At pp. 527 and 528, 104 S.Ct. at pp. 1196–97 and 1197, the court stated:

---

1. Debtor argues that *Matthieson* and *Parrish* are inapplicable to this case since those cases involved Chapter 7 debtors and did not discuss executory contracts in a Chapter 11 setting. Debtor urges this Court to follow the reasoning of *In re Walat Farms, Inc.,* 69 B.R. 529 (Bankr.E. D.Mich.1987). However, this argument was made and rejected in *In re Pinkert,* 75 B.R. 218,

221 (Bankr.N.D.Tex.1987). This Court chooses to follow, and adopts herein, the reasoning of the *Pinkert* court.

2. Debtor makes the argument that mutuality is lacking in this case, asserting that the debtor-in-possession is a separate and distinct entity from the pre-petition debtor.

Much effort has been expended by the parties on the question of whether the debtor is more properly characterized as an 'alter ego' or a 'successor employer' of the prebankruptcy debtor, as those terms have been used in our labor decisions.... We see no profit in an exhaustive effort to identify which, if either, of these terms represents the closest analogy to the debtor-in-possession. Obviously if the latter were a wholly 'new entity,' it would be unnecessary for the Bankruptcy Code to allow it to reject executory contracts, since it would not be bound by such contracts in the first place. For our purposes, it is sensible to view the debtor-in-possession as the same 'entity' which existed before the filing of the bankruptcy petition, but empowered by virtue of the Bankruptcy Code to deal with its contracts and property in a manner it could not have employed absent the bankruptcy filing.

At p. 544, 104 S.Ct. at p. 1206, Justice Brennan, in his partially concurring and partially dissenting opinion, stated, "[t]he Court today properly rejects the 'new entity' theory, conceding that the debtor in possession is a party within the meaning of § 8(d)...." [3]

"While the post-petition estate is not a 'wholly new entity' distinct from the pre-petition debtor, there is a definite cleavage which separates the two upon the filing of a bankruptcy petition." *Matter of O.P.M. Leasing Services, Inc.*, 68 B.R. 979, 983 (Bankr.S.D.N.Y.1987). In *In re Buske, supra*, at 216, the court said it did not reach the argument about whether the ASCS contracts are executory contracts subject to acceptance or rejection.

---

**3.** *See, In re Ontario Locomotive & Industrial Railway Supplies (U.S.), Inc.*, 1990 Bankr. LEXIS 2619 (Bankr.W.D.N.Y.1990). ("In [*Bildisco*] ... the court would appear to have laid to rest the 'separate entity' doctrine for all time."); *In re Mohawk Industries, Inc.*, 82 B.R. 174, 176–177 (Bankr.D.Mass.1987) (The ground often relied upon for this absence of mutuality is the view that the debtor-in-possession is a different entity from the pre-petition debtor—this rationale is no longer supportable, at least in such terms) (citing to *Bildisco*); *Matter of Durham*, 87 B.R. 300, 302 (Bankr.D.Del.1988) ("for purposes of § 365 of title 11 a debtor-in-possession is not a new entity.") (citing *Bildisco*) *aff'd.* 100 B.R. 711 (D.Del.1989). *See also, In re Hartec Enterprises, Inc.*, 117 B.R. 865, 872–873 (Bankr.W.D.Tex. 1990) discussing *Matter of West Electronics*, 852 F.2d 79 (3rd Cir.1988).