PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1136
_____

IN RE: OREXIGEN THERAPEUTICS, INC.,

Debtor

MCKESSON CORPORATION; RXC ACQUISITION
COMPANY,

Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No.1-18-cv-01873)
District Judge:  Hon. Colm F. Connolly
_____

Argued
November 17, 2020

Before:   JORDAN, KRAUSE, and RESTREPO, *Circuit
Judges*

(Filed:  March 19, 2021)
_____

Jeffrey K. Garfinkle  [ARGUED]
Daniel H. Slate
BUCHALTER
3131 Princeton Pike
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514

Kurt F. Gwynne
Jason D. Angelo
REED SMITH LLP
1201 North Market Street, Suite 1500
Wilmington, DE 19801
        *Counsel for Appellants*

Eric Winston
Bennett Murphy  [ARGUED]
Razmig Izakelian
QUINN EMANUEL URQUHART & SULLIVAN LLP
865 S. Figueroa Street, 10th Floor
Los Angeles, CA, 90017

Christopher M. Samis
L. Katherine Good
POTTER ANDERSON & CORROON LLP
Christopher M. Samis
The Renaissance Centre
405 North King Street, Suite 500
Wilmington, DE 19801
        *Counsel for Appellees*

_____

OPINION OF THE COURT

_____

JORDAN, *Circuit Judge*.

This dispute turns on the meaning of the word "mutual" in the provision of the Bankruptcy Code that allows parties to invoke setoff rights when the debts they owe one another are mutual. *See* 11 U.S.C. § 553.

McKesson Corporation, Inc. ("McKesson") and Orexigen Therapeutics, Inc. ("Orexigen") agreed to a pharmaceutical distribution deal and included a provision in their contract whereby McKesson, as distributor of the drug, could reduce what it owed to Orexigen, the drug manufacturer, by any amount that Orexigen owed to McKesson or any McKesson subsidiary. Shortly thereafter, one of those subsidiaries, McKesson Patient Relationship Solutions ("MPRS"),[1] separately agreed to help Orexigen with a consumer discount program by advancing cash to pharmacies, with Orexigen then obligated to reimburse MPRS. Later, when Orexigen filed for bankruptcy, it owed MPRS approximately $9 million, and McKesson owed Orexigen approximately $7 million. The Bankruptcy Court and the District Court rejected McKesson's request to set off its debt by the amount Orexigen owed MPRS, which would have reduced MPRS's claim to approximately $2 million and McKesson's debt to zero. Both courts held that what McKesson wanted was a triangular setoff, not a mutual one, and thus was not the kind allowable under § 553 of the Bankruptcy Code. We agree and will affirm.

---

[1] MPRS later merged into RxC Acquisition Company, a named Appellant, which is also a subsidiary of McKesson.

3

## I.  BACKGROUND

Orexigen was a publicly traded pharmaceutical company whose only commercial product was a weight management drug called Contrave.  On June 9, 2016, Orexigen entered into a "Distribution Agreement" with McKesson, whereby Orexigen sold Contrave to McKesson, and McKesson in turn provided the drug to pharmacies.  Included in the Distribution Agreement was a "Setoff Provision" that permitted "each of [McKesson] and its affiliates … to set-off, recoup and apply any amounts owed by it to [Orexigen's] affiliates against any [and] all amounts owed by [Orexigen] or its affiliates to any of [McKesson] or its affiliates."  (App. at 13.)

Separate from the Distribution Agreement, MPRS and Orexigen entered into a "Services Agreement" on July 5, 2016. Under the Services Agreement, MPRS managed a customer loyalty program for Orexigen, pursuant to which patients would receive price discounts from pharmacies.  MPRS would advance funds to pharmacies selling Contrave, with reimbursement arriving later from Orexigen.  The Distribution Agreement and Services Agreement did not reference, incorporate, or integrate one another, and the parties agree that McKesson and MPRS were distinct legal entities.

By the time Orexigen filed its petition for Chapter 11 relief on March 12, 2018 (the "Petition Date"), it owed MPRS approximately $9.1 million under the Services Agreement, and McKesson owed Orexigen some $6.9 million under the

4

Distribution Agreement.[2]   Had there been a setoff of those obligations pursuant to the Setoff Provision, Orexigen would have owed MPRS $2.2 million and McKesson would have owed Orexigen nothing.

On March 16, 2018, four days after the Petition Date, Orexigen filed a motion to sell substantially all of its assets for $75 million in cash.  McKesson objected to the asset sale, and, following that objection, the parties negotiated for McKesson to pay the approximately $6.9 million receivable it owed to Orexigen, while Orexigen agreed to keep that sum segregated pending resolution of the setoff dispute.[3]

McKesson and MPRS then asked the Bankruptcy Court to decide their rights to the segregated funds under the Setoff Provision in the Distribution Agreement and § 553 of the Code.[4]   The Court rejected McKesson's argument for a setoff

---

[2] Orexigen says there is a dispute over the amount Orexigen owes MPRS, claiming the proof of claim only establishes $8,564,075.68 due.  The Bankruptcy Court held, and we agree, that the precise amount is not material to the legal questions presented.

[3] The segregated $6.9 million is currently held by Province, Inc., which, as the administrator of the bankruptcy estate, has taken control of Orexigen's remaining assets pursuant to the confirmed liquidation plan.

[4] Section 553 reads: "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the

because, while the Setoff Provision constituted an "enforceable contractual right allowing a parent and its subsidiary corporation to [e]ffect a prepetition triangular setoff under state law[,]" that relationship "does not supply the strict mutuality required in bankruptcy." *In re Orexigen Therapeutics, Inc.*, 596 B.R. 9, 12 (Bankr. D. Del. 2018).[5]

The Bankruptcy Court went on to discuss the meaning of mutuality, relying on its own precedent in a case called *In re SemCrude* to conclude that § 553 "is strictly construed against the party seeking setoff." *Id.* at 17 (citing *In re SemCrude, L.P.*, 399 B.R. 388, 396 (Bankr. D. Del. 2009) (citation omitted)). It held, as it had in *SemCrude*, that contracts cannot

commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case[.]" 11 U.S.C. § 553(a). Three enumerated exceptions follow. Section 553 uses the terms "offset" and "setoff," while the parties often use the term "setoff." Viewing these as synonyms, we generally use the latter herein, as that is the language used in documents at issue in the case.

[5] The Bankruptcy Court assumed without deciding that the parties had an enforceable prepetition right to setoff under California law. *See In re Orexigen Therapeutics, Inc.*, 596 B.R. at 15. It noted that, although the parties disputed whether McKesson was a creditor within the meaning of § 553, they did not substantially brief the issue, so it deemed McKesson a creditor such that it could pursue its setoff claim, particularly in light of the parties' stipulation to preserve the disputed assets. *See id*. at 16.

turn nonmutual debts into debts subject to setoff under the Code, as if they had been mutual. *See id.* at 18. The Court rejected McKesson's argument that mutuality merely "identifies the state-law right that is thereby preserved unaffected in bankruptcy." (Opening Br. at 14.) It further rejected the notion that MPRS's alleged status as a third-party beneficiary of the Distribution Agreement created mutuality. *See In re Orexigen Therapeutics, Inc.*, 596 B.R. at 22–23. The Court saw those arguments as attempts to "contract around section 553(a)'s mutuality requirement." *Id.* at 21.

As was its right under § 365 of the Code, Orexigen rejected the Distribution Agreement and the Services Agreement, and the Bankruptcy Court then confirmed Orexigen's plan for liquidation.[6] McKesson appealed the Bankruptcy Court's mutuality decision to the District Court, which affirmed. This timely appeal followed.

## II.  DISCUSSION[7]

Section 553 of the Bankruptcy Code says that, "[e]xcept as otherwise provided …, this title does not affect any right of

---

[6] Section 365 states: "Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

[7] The Bankruptcy Court had jurisdiction under 28 U.S.C. §§ 1334(b), 157(a) and 157(b)(1). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d)(1). We "'stand in the shoes' of the District Court and … review the

7

a creditor to offset a *mutual* debt owing by such creditor to the debtor … against a claim of such creditor against the debtor[.]" 11 U.S.C. § 553(a) (emphasis added). The meaning of mutuality in that provision is a matter of first impression for us. And while our sister circuits have opined on the importance of mutuality as a distinct limitation of § 553, they have not ruled on whether a contract can create an exception to the requirement of direct mutuality. Our task is to understand what Congress meant in using the term "mutual" in that Code section.

Orexigen asks us to adopt the reasoning of a unanimous line of authority from bankruptcy courts, beginning with *SemCrude*, that requires strict bilateral mutuality for § 553 to apply. McKesson, on the other hand, argues that *SemCrude* and the cases that follow it should be upended because the word "mutual" in § 553 is merely a non-limiting adjective meant to invoke an understanding of how state law setoff rights generally operate. We conclude that the analysis set forth in *SemCrude* is sound and the Bankruptcy Court and District Court here rightly treated mutuality as a distinct statutory requirement under § 553.

---

Bankruptcy Court's legal conclusions *de novo* and its factual findings for clear error." *In re Global Indus. Techs., Inc.*, 645 F.3d 201, 209 (3d Cir. 2011) (en banc) (citations omitted). Elements of the Bankruptcy Court's setoff decision are within its discretion, although the legal standards it applies are not. *See In re Garden Ridge Corp.*, 399 B.R. 135, 139 (D. Del. 2008) (citing *In re United Healthcare Sys., Inc.*, 396 F.3d 247, 249 (3d Cir. 2005)); *In re Gould*, 401 B.R. 415, 429 (B.A.P. 9th Cir. 2009).

## A. The Term "Mutual" in § 553 Imposes a Distinct Limitation

The parties agree, as an initial matter, that to assert a setoff exception under § 553, a right to setoff must exist under applicable state law.[8] Their disagreement begins with McKesson's contention that both the general right to enforce a setoff and the requisite mutuality are defined by state law, with § 553 imposing no independent mutuality limitation. In other words, McKesson contends that the term "mutual" is nothing more than a "definitional scope provision that identifies the state-law right that is thereby preserved unaffected in bankruptcy[.]" (Opening Br. at 14.) Orexigen argues in response that the modifier "mutual," as used in § 553, imposes a distinct limitation strictly construed to prohibit enforcement of a setoff agreement involving three or more parties and indirect debt obligations.

As the *SemCrude* court noted, a compelling body of precedent, including from this Court, treats mutuality in § 553 as a limiting term, not a redundancy. *See In re SemCrude, L.P.*,

---

[8] They are correct. *See United States ex rel. IRS v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983) ("[Section 553] is not an independent source of law governing setoff; it is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of non-bankruptcy law" and "the courts below were correct in looking to state law to determine when a setoff has occurred."); *see also Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 18 (1995).

399 B.R. at 393 (collecting cases).[9] McKesson tries to rebut the import of those cases by pointing out that § 553 includes three expressly enumerated federal exceptions to the right to enforce a setoff, and an exception focused on non-mutual debts is not among them.[10] It argues that Congress would have

[9] *See In re Univ. Med. Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992) ("The doctrine of setoff … gives a creditor the right 'to offset a mutual debt owing by such creditor to the debtor,' provided that both debts arose before commencement of the bankruptcy action and are in fact mutual.") (citation omitted); *see also PACA Tr. Creditors of Lenny Perry's Produce, Inc. v. Genecco Produce Inc.*, 913 F.3d 268, 277 n.4 (2d Cir. 2019) ("[T]he U.S. Bankruptcy Code … makes offsets available only for 'mutual' debts."); *In re Meyer Med. Physicians Grp., Ltd.*, 385 F.3d 1039, 1041 (7th Cir. 2004) ("Mutuality requires that the debt in question be owed in the same right and between the same parties standing in the same capacity[.]"); *In re Myers*, 362 F.3d 667, 672 (10th Cir. 2004) ("Under § 553, a creditor with an independent right of setoff may setoff a debtor's obligations only if the creditor satisfies three elements…. Third, the creditor's and debtor's obligations must be mutual."); *In re Verco Indus.*, 704 F.2d 1134, 1139 (9th Cir. 1983) ("The timing and mutuality elements must both be satisfied to establish a set-off under [§ 553].").

[10] Those enumerated exceptions are: "(1) the claim of such creditor against the debtor is disallowed; (2) such claim was transferred, by an entity other than the debtor, to such creditor … after the commencement of the case; or … after 90 days before the date of the filing of the petition; and … while the debtor was insolvent … or (3) the debt owed to the debtor by such creditor was incurred by such creditor – after 90 days

10

included an enumerated exception bearing on mutuality if it had intended that concept to serve as a limitation under federal law rather than a term simply descriptive of state law.

Orexigen has the better of the argument, however, because McKesson's reading of the statute would render the term "mutual" redundant, as the phrase "any right … to offset" provides adequate definitional scope to § 553. To reiterate, the operative language reads "this title does not affect *any right of a creditor to offset a mutual debt*." 11 U.S.C. § 553(a) (emphasis added). Moreover, the text immediately following that language, although not enumerated, provides a limiting effect on the enforceability of § 553 by stating that both the debtor's claim against the creditor and the creditor's claim against the debtor must "ar[i]se before the commencement of the case." *Id.* That requirement is consistently viewed as a distinct limitation on the ability to assert a setoff right, and there is no persuasive reason to treat the requirement of mutuality any differently.[11]

---

before the date of the filing of the petition; while the debtor was insolvent; and for the purpose of obtaining a right of setoff against the debtor[.]" 11 U.S.C. § 553(a)(1)–(3).

[11] *See In re Garden Ridge Corp.*, 338 B.R. 627, 633 (Bankr. D. Del. 2006); *In re James River Coal Co.*, 534 B.R. 666, 669–70 (Bankr. E.D. Va. 2015); *In re Am. Home Mortg. Holdings, Inc.*, 501 B.R. 44, 56 (Bankr. D. Del. 2013); *In re Sentinel Prod. Corp.*, 192 B.R. 41, 45 (N.D.N.Y. 1996); *In re Westchester Structures, Inc.*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995); *In re Woodside Grp., LLC*, No. 6:08-bk-20682, 2009 WL 6340015, at *4 (Bankr. C.D. Cal. Dec. 30, 2009).

### B. Mutuality Under § 553 Excludes Triangular Setoffs, Including the Setoff Provision in the Distribution Agreement

Having determined that mutuality is a distinct and limiting requirement of federal bankruptcy law, we next consider the effect of that limitation. We again agree with and adopt the *SemCrude* court's well-reasoned conclusion that Congress intended for mutuality to mean only debts owing between two parties, specifically those owing from a creditor directly to the debtor and, in turn, owing from the debtor directly to that creditor. Congress did not intend to include within the concept of mutuality any contractual elaboration on that kind of simple, bilateral relationship.

Given basic premises of the Bankruptcy Code, that is not surprising. "[S]etoff is at odds with a fundamental policy of bankruptcy, equality among creditors, because it permits a creditor to obtain full satisfaction of a claim by extinguishing an equal amount of the creditor's obligation to the debtor, i.e., in effect, the creditor receives a preference." *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 896 F.2d 54, 57 (3d Cir. 1990) (internal quotation marks and citation omitted). Thus, we and our sister circuits have indicated that triangular setoffs – in which party A owes party B who next owes party C who then owes party A – are definitionally not mutual. *See id.* at 59 ("To be mutual, the debts must be in the same right and between the same parties, standing in the same capacity.") (citation omitted); *In re United Sciences of Am., Inc.*, 893 F.2d 720, 723 (5th Cir. 1990) ("The requirement of mutuality is 'that each party ... own his claim in his own right severally, with the right to collect in his own name [and] in his own right and severally.'") (citation omitted); *MNC Commercial Corp.*

12

*v. Joseph T. Ryerson & Son, Inc.*, 882 F.2d 615, 618 n.2 (2d Cir. 1989) ("[A] subsidiary's debt may not be set off against the credit of a parent."); *In re Elcona Homes Corp.*, 863 F.2d 483, 486 (7th Cir. 1988) ("[T]he statute itself speaks of '*a mutual debt*[.]'").

That should end the matter, but McKesson insists that its Setoff Provision in the Distribution Agreement turns the debts between Orexigen and MPRS and between McKesson and Orexigen from a triangular debt arrangement into a mutual debt. The error of that assertion is described in *SemCrude*.[12]

---

[12] *SemCrude* traced the history of attempts to create a contractual exception to strict mutuality, through dicta in various decisions, back to a single case, *In re Berger Steel Co.*, 327 F.2d 401 (7th Cir. 1964), now almost 60 years old. But even *Berger* had not actually authorized such an exception. In *Berger*, a creditor sought a priority interest in a sum of money which the debtor owed to a subsidiary of that creditor, pursuant to an alleged setoff agreement between the three parties. *See id.* at 401–04. The Court did not reach whether such a "tripartite agreement" could be enforced under the predecessor to § 553, instead merely affirming the District Court's ruling that no such contract even existed. *See id.* at 405–06. As explained in *SemCrude*, it "avoided addressing the … question of whether a triangular setoff was permissible under the Bankruptcy Act if a contract signed by the parties to the proposed setoff contemplated such a remedy." 399 B.R. at 395. Thus, there is no authority supporting a contractual exception to the mutuality requirement of § 553. *See id.* at 396–99.

There, a contract like the Distribution Agreement at issue here created the right to set off debts owed by the creditor or its affiliates against debts owed by the debtor or its affiliates. *SemCrude*, 399 B.R. at 391. The court gave that agreement careful consideration but rightly recognized that contractual arrangements cannot transform a triangular set of obligations into bilateral mutuality. The mutuality requirement set a limit, and "[t]he effect of [mutuality's] narrow construction is that 'each party must own his claim in his own right severally, with the right to collect in his own name against the debtor in his own right and severally.'" *Id.* at 396 (quoting *In re Garden Ridge Corp.*, 338 B.R. 627, 633–34 (Bankr. D. Del. 2006), *aff'd*, 399 B.R. 135 (D. Del. 2008), *aff'd*, 386 F. App'x 41 (3d Cir. 2010)). In the end, "mutuality cannot be supplied by a multi-party agreement contemplating a triangular setoff." *Id.* at 397. The court noted in its statutory interpretation that, "[i]n articulating exactly who must owe whom a debt to effect a setoff under [§] 553(a), Congress used a greater detail of precision than is seen in many other parts of the Code." *Id.* Moreover, the policies of the Code disfavor a contractual exception to mutuality. In particular, "[o]ne of the primary goals—if not the primary goal—of the Code is to ensure that similarly-situated creditors are treated fairly and enjoy an equality of distribution from a debtor absent a compelling reason to depart from this principle." *Id.* at 399. Triangular setoffs undermine that goal.

The reasoning of *SemCrude* has been frequently relied on in other bankruptcy cases, including this one.[13] In

---

[13] *See In re Orexigen Therapeutics, Inc.*, 596 B.R. at 16–22; *In re Pursuit Capital Mgmt., LLC*, 595 B.R. 631, 659 n.124 (Bankr. D. Del. 2018); *Carn v. Heesung PMTech Corp.*, 579

14

embracing the *SemCrude* analysis, the Bankruptcy Court for the Southern District of New York succinctly explained that "mutuality quite literally is tied to the identity of a particular creditor that owes an offsetting debt. The right is personal, and there simply is no ability to get around this language [of § 553]. Parties may freely contract for triangular setoff rights, but not in derogation of these mandates of the Bankruptcy Code." *In re Lehman Bros. Inc.*, 458 B.R. 134, 141 (Bankr. S.D.N.Y. 2011). We agree.[14]

---

B.R. 282, 294–95 (M.D. Ala. 2017); *In re TSAWD Holdings, Inc.*, 565 B.R. 292, 301 (Bankr. D. Del. 2017); *In re: All Phase Steel Works, LLC*, No. 3:16-cv-00844, 2016 WL 6208252, at *5 (D. Conn. Oct. 24, 2016); *In re Arcapita Bank B.S.C.(c)*, No. 12-11076, 2014 WL 2109931, at *3 (Bankr. S.D.N.Y. May 20, 2014); *In re Am. Home Mortg. Holdings, Inc.*, 501 B.R. at 55; *In re Direct Response Media, Inc.*, 466 B.R. 626, 658 (Bankr. D. Del. 2012).

[14] This view of § 553 is completely consistent with the cases cited by McKesson where courts have found mutuality despite one end of the mutual debts being joint and several, such as a chargeback right held by a bank against all its customers. In all of those cases the debts are still directly owing between the debtor and creditor. *See, e.g.*, *In re United Sciences of Am., Inc.*, 893 F.2d at 723 ("[W]hen First City exercised its contractual right to debit USA's account for chargebacks paid to the issuing banks, it asserted this claim … in its own name and in its own right, regardless of whether it was in fact a surety or an indemnitee of USA."); *In re Diplomat Elec., Inc.*, 499 F.2d 342, 348 (5th Cir. 1974) ("The courts have uniformly interpreted Section 68[, the predecessor to § 553,] of the Bankruptcy Act as did the court below whenever joint and

If McKesson wanted mutuality for the debts in question, it should have taken on the customer loyalty support that it instead had its subsidiary MPRS handle for Orexigen. Alternatively, if McKesson wanted MPRS to have a perfected security interest in Orexigen's account receivable due from McKesson, it should have taken steps to arrange that. By perfecting a security interest, MPRS may have obtained a priority right to the same amount McKesson now seeks via setoff, which would have had the added benefit of placing Orexigen's other creditors on advance notice of that priority claim. *See* U.C.C. § 9-301 (to perfect a lien on property, the owner must file a disclosure according to the rules of the local jurisdiction); 11 U.S.C. § 507 (prioritizing claims secured by a lien over unsecured claims); *In re Elcona Homes Corp.*, 863 F.2d at 486 (noting that "the recognition by state law of a right of set off makes the set off a form of secured financing"); *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 416 (3d Cir. 1988) ("A long-standing tenet of bankruptcy law requires one seeking benefits under its terms to satisfy a

---

several obligations have been urged as a bar to mutuality." (citation omitted)); *In re Sherman Plastering Corp.*, 346 F.2d 492, 493 (2d Cir. 1965) ("The sureties were explicitly held jointly liable (a point much stressed by appellant although we can perceive no difference here relevant between a joint and several liability)."); *In re Calstar, Inc.*, 159 B.R. 247, 256 (Bankr. D. Minn. 1993) (explaining that chargebacks between a debtor's debit account and a bank are "a series of classic setoffs"); *In re Classic Roadsters, Ltd.*, No. 92-30914, 1993 WL 1623209, at *7–9 (Bankr. D.N.D. Apr. 13, 1993) (finding mutuality satisfied by a chargeback agreement between consumers and a bank).

companion duty to schedule, for the benefit of creditors, all his interests and property rights." (citation omitted)). McKesson's desired outcome, wherein contractual setoff agreements can shoehorn multiparty debts into § 553, would disincentivize public disclosure of prioritized claims, weakening a fundamental purpose of the Code.

In contrast, a rule that excludes nonmutual debts from the setoff privilege of § 553 promotes predictability in credit transactions. *See* Megan McDermott, *Justice Scalia's Bankruptcy Jurisprudence: The Right Judicial Philosophy for the Modern Bankruptcy Code?*, 2017 UTAH L. REV. 939, 953 (2017) (arguing that "rule-based textualism is particularly advantageous for the bankruptcy field" because of "the inefficient nature of bankruptcy litigation" and "the central role bankruptcy law plays in commercial markets"). An unambiguous rule regarding the scope of § 553 maximizes the payout for all parties by avoiding litigation expenses. *See* The Honorable Thomas F. Waldron & Neil M. Berman, *Principled Principles of Statutory Interpretation: A Judicial Perspective After Two Years of BAPCPA*, 81 AM. BANKR. L.J. 195, 213 (2007) ("In a bankruptcy proceeding where assets seldom exceed liabilities, and every dollar applied to costs and fees – attorneys, trustees, committees, and others – is a dollar not available for distribution to creditors, consistency in statutory interpretation takes on additional significance[.] … Consistent application of the principles of statutory interpretation is a necessary element in a court's attempt to provide predictability.").

### C. McKesson's Attempt to Creatively Define the Term "Claim" Does Not Avoid the Requirements of Mutuality Under § 553

In the alternative, McKesson argues that it actually holds a direct claim against Orexigen under the Setoff Provision of the Distribution Agreement. It tries to frame its requested setoff as effectively being two-sided: on one side, it argues, is the account receivable owed by McKesson to Orexigen, and on the other side is the Setoff Provision of the Distribution Agreement. Again, the *SemCrude* court faced just such an argument and persuasively rejected the attempt to escape triangularity by redefining what constitutes a "claim" under § 553. *See In re SemCrude, L.P.*, 399 B.R. at 397 ("An agreement to setoff funds, such as the one claimed by Chevron in this case, does not give rise to a debt that is 'due to' Chevron and 'due from' SemCrude. … Likewise, Chevron does not have a 'right to collect' against SemCrude under the agreement in this case."). We follow suit.

McKesson's position is nothing but a recasting of its failed effort to defeat the purpose and meaning of § 553. It focuses on the definition of the term "claim" in isolation and ignores the rest of § 553, which necessarily refines the term's meaning. If McKesson's definition of claim were to be inserted in this context, § 553 would state that "this title does not affect any right of a creditor to offset a mutual debt … against [a setoff right] of such creditor." Trying to offset a debt against a setoff right strikes us as nonsense.[15] Accordingly, we

---

[15] The word "setoff" means to subtract, so the term "claim," at least in the context of § 553, must be limited to the types of claims that connote a positive rather than negative

reject McKesson's interpretation of the term "claim" in the context of § 553. "At bottom, [McKesson] may enjoy privity of contract with [Orexigen], but it lacks the mutuality required by the plain language of [§] 553."[16] *In re SemCrude, L.P.*, 399 B.R. at 397.

## III.    CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court that affirmed the Bankruptcy Court's ruling.

---

value, because when one subtracts a negative one is performing addition.

[16] Having held in favor of Orexigen on the meaning and application of mutuality in § 553, we do not reach its remaining arguments.